**UNITED STATES of America, Appellee,**

v.

**Victor KIENDRA, Defendant, Appellant.**

**No. 81–1217.**

United States Court of Appeals,
First Circuit.

Nov. 9, 1981.

---

Stephen R. White, Providence, R. I., by appointment of the Court, on brief for appellant.

Paul F. Murray, U. S. Atty., and James E. O'Neil, Asst. U. S. Atty., Providence, R. I., on brief for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BREYER, Circuit Judges.

COFFIN, Chief Judge.

Appellant was convicted of interstate transportation of stolen motor vehicles by a jury in the federal district court for the District of Rhode Island. On appeal, he challenges two rulings of the trial judge: (1) that an FBI Agent who interrogated him in prison could testify about appellant's confession to the crimes, and (2) that the government could, if appellant testified in his own defense, present impeachment evidence that he had prior convictions for possession of a stolen vehicle and receipt of stolen goods. Appellant argues that the trial judge erred first by finding that the confession was a product of a valid waiver of his *Miranda* rights, and second, by ruling that Rule 403 of the Federal Rules of Evidence does not give a trial judge discretion to prohibit the use of prior convictions. We affirm the district court's disposition of both issues.

While serving a sentence at the Rhode Island Adult Correctional Institution (ACI), appellant escaped in December, 1979. On January 2, 1980, he was arrested in Rhode Island while driving an automobile believed to have been stolen in Massachusetts. He was returned to the ACI and placed in solitary confinement for thirty days. While in solitary confinement, he allegedly undertook a "hunger strike" during which he consumed only one glass of milk per day. On February 4, 1980, FBI Agent Richard Cleary conducted a custodial interrogation. During that interrogation, appellant signed a "waiver of rights" form and allegedly made several inculpatory statements.

At a suppression hearing, the defendant moved to suppress the statements. He testified that he had not made any statements, that he was in a weakened condition due to the hunger strike, and that he signed the waiver form only "to get rid of" Agent Cleary. He called an ACI cook steward who testified that in early February appellant was "pale looking", "wasn't responding as well" as before, and weighed thirty pounds less than he had four months earlier. Agent Cleary testified that he had warned appellant of his rights at the beginning of the interview, appellant had acknowledged his understanding, had signed a waiver form, and had announced that "he didn't want to make any statement about any other car than the ones we thought we

could prove." Cleary also testified that appellant appeared physically sound, in good health, and of sound mind.

■ A suspect who has been properly warned of his rights can "waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). *See Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). On appeal, appellant does not deny that he was properly informed of his rights before his confession. Nor does he deny that he signed a form waiving those rights. Rather, he challenges the district court's finding that his waiver and subsequent confession were voluntary, knowing, and intelligent.

■ At the outset we note the standard of review applied where a district court denies a motion to suppress a confession, finding that the defendant validly waived his right to remain silent. The ruling is to be upheld if any reasonable view of the evidence supports it, *United States v. Payton*, 615 F.2d 922 (1st Cir.), *cert. denied*, 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 830 (1980), and any specific findings of fact made after a hearing are binding unless they are clearly erroneous. *United States v. Jobin*, 535 F.2d 154 (1st Cir. 1976).

■ In this case, the district court made several specific findings to support its conclusion that the waiver was valid. It specifically rejected the testimony of the cook to the effect that the defendant was disoriented. It specifically accepted the testimony of FBI Agent Cleary that the defendant acted in the fashion one would expect from a person accused of a crime. And it also accepted Agent Cleary's description of what transpired during the interview. Nothing in the record suggests that these findings with regard to the credibility of the witnesses were clearly erroneous.

In his brief, appellant offers several reasons to conclude that his actions were not voluntary. First, he cites the fact that he had only a ninth-grade education. Second, he cites the fact that he had spent 30 days in solitary confinement prior to his interrogation by Agent Cleary. Third, he asserts that he was in a weakened state as the result of a thirty-two day hunger strike. And, finally, he cites his own testimony that he did not intend to make any statements and he signed the waiver only to "get rid of" Agent Cleary.

These allegations, when read together with a reasonable view of the evidence presented at the hearing, do not demonstrate that the district court's finding of a valid waiver was clearly erroneous. Appellant's educational level is not so low as to make unreasonable Agent Cleary's perception of his understanding or to render a written waiver per se invalid. Similarly, his solitary confinement (due to an earlier escape from prison) cannot be presumed to have weakened his will to such an extent that he was incompetent to exercise his rights. Indeed, the trial court found that appellant deliberately chose to limit his conversation with Agent Cleary to a discussion of certain particular stolen automobiles; he refused to discuss other automobiles about which the FBI had little evidence. The trial court made no specific finding with regard to whether appellant had in fact engaged in a hunger strike; it is reasonable to conclude from the record, however, that even if he had engaged in such a strike, he was not *in extremis* at the time of the interrogation. Appellant himself testified that he weighed 184 pounds before the strike and that he told Agent Cleary he weighed 180 pounds during the interrogation. Finally, appellant's testimony regarding his state of mind during the interrogation is insufficient to make the district court's finding unreasonable.

None of the cases cited by appellant are apposite. The case he deems "of particular relevance to the appellant", *Greenwald v. Wisconsin*, 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968), involved a defendant who was not informed of his constitutional rights, who requested but was not given counsel, and who had been held for almost

twenty-four hours without receiving medication which he was supposed to receive twice a day. That case clearly does not control this one.

In concluding, we emphasize the Supreme Court's recent reminder that "the voluntariness of a consent or an admission on the one hand, and a knowing and intelligent waiver on the other, are discrete inquiries". *Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981). Neither the trial court nor the parties were careful to keep the inquiries separate in this case. Nevertheless, we believe that a reasonable view of the record amply supports the conclusion that appellant's voluntary waiver was also "knowing and intelligent". An explicit written waiver is strong evidence of a knowing and intelligent act. *North Carolina v. Butler, supra,* 441 U.S. at 373, 99 S.Ct. at 1757. That evidence is bolstered here by Agent Cleary's testimony regarding appellant's decision to limit the scope of the interrogation, as well as by appellant's admission at trial that he had understood his rights during the interrogation. Indeed, the only evidence that might cast doubt on the intelligence of the waiver was (1) appellant's testimony that he signed the form only to acknowledge that he understood his rights, not to forego them, and (2) Agent Cleary's testimony that appellant was willing to make oral statements but not written ones. Appellant's testimony, however, could permissibly be rejected as not credible. And although Agent Cleary's testimony might imply that appellant did not fully understand that oral statements could be used against him, that inference is not compelled. Appellant could rationally make oral statements but not written ones if he planned to deny the oral statements at trial (hoping jurors might find him more credible than the Agent) and he thought that his words might distract the Agent from investigating into other crimes.

Thus, a reasonable reading of the record supports the district court's decision to admit evidence of the confession.

The defendant also challenges the trial judge's deliberate and detailed advance rul-

ing that, under Federal Rule of Evidence 609(a)(2), he had no discretion to keep the state from eliciting the defendant's prior convictions for crimes involving dishonesty, even if the prejudicial effect of those convictions would substantially outweigh their impeachment value.

█ The government urges that we not review this issue because the record gives no basis for determining whether the defendant would have testified, and what the substance of his testimony would have been, if the trial court had granted his motion. We deem these suggestions unrealistic. We think it more sensible to assume that testimony by a criminal defendant would be quite relevant; such a presumption helps to explain the recently acknowledged right to testify in one's own defense. *Faretta v. California,* 422 U.S. 806, 819 n.15, 95 S.Ct. 2525, 2533 n.15, 45 L.Ed.2d 562 (1975). *See also New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979). Moreover, when a defendant seeks an advance ruling on the permissibility of prior-crimes impeachment, it may also be presumed that the defendant will in fact testify if the motion is granted. If the government has special reason to question a particular defendant's willingness to testify or the impact of his potential testimony, it should address its doubts to the district court in response to the motion *in limine.* Such considerations, when promptly raised, may assist the trial judge in exercising his broad discretion about whether to give advance rulings. *See United States v. Hickey,* 596 F.2d 1082, 1087 (1st Cir. 1979); *United States v. Oakes,* 565 F.2d 170 (1st Cir. 1977). But where, as in this case, the government does not challenge the defendant's motives before the trial judge, and the judge issues a clear and final ruling, that ruling merits review. *See United States v. Hickey, supra,* 596 F.2d at 1086–87 & n.3. Any rule to the contrary would to some extent be inconsistent with our decision, in the special area of prior convictions, to encourage (although not to require) advance rulings on admissibility where the trial court, in its discretion, finds them ap-

propriate. *See United States v. Oakes, supra,* 565 F.2d at 173.

We therefore turn to the substance of the trial judge's ruling. Rule 609(a) of the Federal Rules of Evidence reads as follows:

"*General Rule.* For the purposes of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination, but only if the crime

(1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, *and* the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant *or*

(2) involved dishonesty or false statement, regardless of the punishment."

The defendant in this case had prior convictions for possession of a stolen vehicle (R.I. Gen.Laws § 31–9–2) and receiving stolen goods (R.I.Gen.Laws § 11–41–2). That these were crimes of "dishonesty"—so-called *crimen falsi*—was not disputed; this determination is thus not in issue. In a clear and careful ruling from the bench, the trial judge held: "I must and I again underline the word 'must,' allow them to be elicited on cross-examination. Under the better view I do not have the discretion to balance the probative value against their prejudicial effect". We are now asked to reverse that ruling.

Three different standards of admissibility have been applied in situations where evidence has probative value but also risks unfair prejudice to a party. The first standard gives the trial judge broad discretion to exclude such evidence, requiring exclusion whenever an item's prejudicial effect "outweighs" its probative value. The second standard gives the trial judge somewhat more limited discretion, allowing evidence to be excluded only when its prejudicial effect "*substantially* outweighs" its probative value. The third, most stringent standard, gives the trial judge no discretion, requiring evidence to be admitted, regardless of its prejudicial effect.

The first, most lenient standard—whether prejudice outweighs probative value—is the one applied to evidence offered under Rule 609(a)(1)[1]. That standard, however, clearly is not applied to evidence offered under Rule 609(a)(2). The structure of the rule and its legislative history show that Congress wanted to limit judicial discretion to exclude *crimen falsi* impeachment. *See United States v. Fearwell,* 595 F.2d 771 (D.C.Cir.1978); *United States v. Hawley,* 554 F.2d 50 (2d Cir. 1977).

Appellant argues that the second, intermediate standard—whether prejudicial effect substantially outweighs probative value—should govern evidence offered under Rule 609(a)(2), rather than the stringent standard applied by the trial judge. Although the language of Rule 609(a)(2) does not itself authorize a judge to exclude *crimen falsi* evidence whose prejudicial effect substantially outweighs its probative value, appellant refers us to Rule 403, which provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Appellant argues that Rule 403 is intended to provide a "safety valve" that overlays all the other rules of evidence, including Rule 609(a)(2). He argues that, while Rule 609(a)(1) clearly *increases* judicial discretion to protect defendants from unfair prejudice, Rule 609(a)(2) should not be read to decrease that discretion, since it does not explicitly exempt itself from Rule 403's general standard.

We acknowledge that some courts and commentators have accorded an "open question" status to defendant's argument. *See*

---

1. For the moment, we leave to one side the fact that Rule 609(a)(1) actually goes so far as to put the burden on the government to show that probative value outweighs prejudice. *See United States v. Oakes,* 562 F.2d 170, 172 (1st Cir. 1977).

*United States v. Field*, 625 F.2d 862, 871 n.5 (9th Cir. 1980) ("we do not decide . . ."). *United States v. Papia*, 560 F.2d 827, 845 n.10 (7th Cir. 1977) ("The question remains open . . ."); *United States v. Hayes*, 553 F.2d 824, 827 n.4 (2d Cir. 1977) ("It is an open question . . ."), *cert. denied*, 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977); *United States v. Smith*, 551 F.2d 348, 358 n.20 (D.C.Cir.1976) ("we express no opinion . . .")[2]; J. Weinstein & M. Berger, Evidence ¶ 609[04] (1981) ("still an open question"); P. Rothstein, Federal Rules of Evidence 211 (2d ed. 1978) ("query . . ."); Note, "Protection of Defendants under Federal Rule of Evidence 609(a): Is the Rule an Endangered Species?", 31 Rutgers L.Rev. 908, 908 n.1 (1979); Note, "Prior Conviction Evidence and Defendant Witnesses", 53 N.Y.U.L.Rev. 1290, 1299 n.59 (1978). But the only other circuit to face the issue squarely has rejected the argument. In *United States v. Toney*, 615 F.2d 277 (5th Cir. 1980), *cert. denied*, 449 U.S. 985, 101 S.Ct. 403, 66 L.Ed.2d 248 (1981), a divided panel held that Congress intended prior *crimen falsi* impeachment to be always admissible, without any discretion in the trial judge.

█ We have carefully reviewed the extensive history of the Federal Rules of Evidence, and however sensible a nonabsolutist approach may appear to some of us individually, we are driven by the force of explicit statutory language and legislative history to hold that evidence offered under Rule 609(a)(2) is not subject to the general balancing provision of Rule 403.

We begin with the conflicting language of the two rules. Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed. . . ." Rule 609(a) provides, "evidence that he has been convicted of a crime shall be admitted . . . but only if the crime . . . (2) involved dishonesty or false statement. . . ." Appellant suggests that the seemingly mandatory words "shall be admitted" conflict with and are therefore qualified by the words "may be excluded".

Admittedly, neither rule mentions the other, and if either one did not exist, the other would undoubtedly resolve the present issue. Yet the rules are not of comparable scope. Rule 403 is a general provision intended to govern a wide landscape of evidentiary concerns; Rule 609 is a narrow provision intended to regulate the impeachment of witnesses who have been convicted of prior crimes. "General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment. Specific terms prevail over the general in the same or another statute which otherwise might be controlling". *Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704 (1932) (citations omitted). Nor did the drafters of Rule 403 expect that it would prevail over more specific rules; it was "designed as a guide for the handling of situations for which no specific rules have been formulated." Adv.Comm. Notes, Fed. R.Evid. 403.

The legislative history of Rule 609 supports the natural understanding that the words "shall be admitted" preclude any judicial discretion to exclude *crimen falsi* impeachment.

In March, 1971, the Committee on Rules and Practice of the Judicial Conference published its Revised Draft of the Proposed Rule. In that draft, Rule 609 included a provision that explicitly granted trial judges discretion in accord with the standard of Rule 403:

"(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if the crime

(1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or

(2) involved dishonesty or false statement regardless of the punishment, *unless*

(3) *in either case, the judge determines that the probative value of the evi-*

---

**2.** The District of Columbia Circuit in *Smith* intimated that it was inclined to reject the de-

fendant's argument, but the court explicitly reserved final judgment.

*dence of the crime is substantially outweighed by the danger of unfair prejudice."*

51 F.R.D. 315, 391 (1971) (emphasis added).[3]

That summer, proposed Section 609(a)(3) drew a sharp rebuke from Senator John McClellan on the floor of the Senate. 117 Cong.Rec. 29895. He declared that the drafting Committee had ignored the congressional will expressed in a 1970 amendment to the D.C. Code. Not surprisingly, when the Proposed Rules were officially promulgated by the Supreme Court in November, 1972, the offensive third paragraph had been deleted. H.R.Doc.No. 93–46, at 21 (1973).

Rule 609(a) received extensive scrutiny in both chambers of Congress and underwent many modifications before the final compromise was struck in Conference Committee. Significantly, none of the six different proposals that were suggested by different committees, subcommittees and full houses[4] called for the restoration of paragraph 3 from the Revised Draft. Many proposals explicitly granted judicial discretion to exclude non-*crimen falsi* impeachment; no proposal explicitly mentioned balancing where *crimen falsi* were concerned.

The final version of Rule 609(a) did not appear until the Conference Committee stage. It was a compromise between the House version, which allowed only *crimen falsi* impeachment, and the Senate version, which essentially restored the final Supreme Court recommendation. The compromise allowed non-*crimen falsi* impeachment, subject to broad judicial discretion, and it authorized *crimen falsi* impeachment, without any mention of judicial discretion. In its final report, the Conference Committee spoke with language that cannot be disregarded:

"The admission of prior convictions involving dishonesty and false statement is not within the discretion of the Court. Such convictions are peculiarly probative of credibility and, under this rule, are always to be admitted."

H.R.Conf.Rep.No. 93–1597, 93d Cong., 2d Sess. 9, *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 7051, 7098, 7103.

When it drafted section 609, Congress had before it a Revised Draft that explicitly preserved a trial judge's discretion to exclude *crimen falsi* impeachment under the standard Rule 403. Congress rejected that option, chose mandatory statutory language, and accepted an unambiguous Conference Committee Report. The district court correctly refused to substitute its own judgment for the legislature's.

The decision of the district court is *affirmed.*

---

**3.** The Advisory Committee's note described proposed section 609(a)(3) as "a particularized application" of Rule 403.51 F.R.D. at 393.

**4.** *See* Final Conference Committee draft, approved as P.L. 93–595, *reprinted in* [1974] U.S. Code Cong. & Admin.News, p. 2215; Senate draft, 120 Cong.Rec. 37076–83; Senate Judiciary Committee draft, 120 Cong.Rec. 37075–76; House draft, H.R. 5463, 93d Cong., 2d Sess., 120 Cong.Rec. 2374; House Subcommittee revised draft, *Hearings on H.R. 5463 Before the Subcomm. on Crim. Justice of the House Comm. on the Judiciary,* 93d Cong., 1st Sess. Serial No. 2, Supp. at 378; House Subcommittee first draft, *id.* at 165–66.