**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas R. KUECKER,**
**Defendant-Appellant.**

**No. 83–1908.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 10, 1984.

Decided July 17, 1984.

Rehearing and Rehearing En Banc
Denied Aug. 28, 1984.

Thomas D. Sykes, Asst. U.S. Atty., John R. Byrnes, U.S. Atty., Madison, Wis., for plaintiff-appellee.

Robert H. Friebert, Friebert, Finerty & St. John, Milwaukee, Wis., for defendant-appellant.

Before PELL, CUDAHY and POSNER, Circuit Judges.

PELL, Circuit Judge.

The defendant-appellant, Thomas R. Kuecker, appeals from the judgment following a jury verdict finding him guilty of twelve counts of mail fraud and three counts of wire fraud, pursuant to 18 U.S.C. §§ 1341, 1343. The defendant raises two issues on appeal. First, he appeals from the district court's adverse ruling upon his motion *in limine* to preclude the Government from introducing, for impeachment purposes, evidence of the defendant's prior mail fraud conviction. Second, he claims that the charge to the jury was defective in that the trial judge failed to instruct that an intent to defraud was a necessary element of the crimes upon which the jury found him guilty.

## I. THE FACTS

The defendant does not appeal the sufficiency of the evidence adduced below. To the extent that there is any disagreement about the facts we must view the evidence in the light most favorable to the Government, the prevailing party below. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

The defendant and his wife operated a small business, United States Finance Association, Inc., (USFA), in Eagle River, Wisconsin. USFA presented itself as a loan placement company, matching borrowers and lenders who otherwise would have been unaware of each other's existence. USFA referred to the potential lenders as "brokers" and recruited brokers nationwide. The company sent to prospective brokers a number of brochures, representing itself to be a well-established, experienced, and successful firm in the loan placement business. The correspondence and telephone conversations between USFA and the brokers constitute the factual basis for most of the mail and wire fraud charges. The brokers paid initiation fees to USFA plus a weekly retainer to cover the costs of the advertisements designed to attract potential borrowers. At the brokers' urging, the borrowers would submit a loan application to USFA, together with an application fee. Supposedly, USFA would then match the borrower with a lender. USFA would remit part of the borrowers' fee to the broker if USFA successfully matched the referred borrower with a lender, and USFA would retain the balance. Of the 160 borrowers who submitted 161 loan applications, USFA succeeded in placing only one or two loans.

A grand jury indicted the defendant and his wife on twenty-four counts, among which were the mail and wire fraud counts now before us. At the end of the trial, the jury convicted the defendant on twelve counts of mail fraud and three counts of wire fraud and acquitted the defendant's wife on all counts.

## II. THE ISSUES ON APPEAL

Prior to trial, the defendant made a motion *in limine* to prevent the Government from introducing evidence of the defendant's prior mail fraud conviction, which had led to a three-year jail sentence. He was released from jail in 1974. In the memorandum supporting his motion, the defendant asserted that the prejudice from the evidence outweighed its probative effect. Therefore, the defendant claimed, the Government should not be able to introduce the evidence of the prior conviction. Although relying principally upon rule 403 of the Federal Rules of Evidence for his assertion, the defendant also asserted that rules 404 and 609 supported his position, without differentiating between the rules or demonstrating how they interrelate.

The Government filed a memorandum in response to the defendant's motion *in limine* in which it asserted that the sole

purpose for the introduction of the prior conviction was to impeach the defendant should he choose to testify. The Government maintained that the prior conviction was highly relevant to the issue of the defendant's credibility, and therefore the probative value of the evidence for the impeachment of the defendant as a witness would substantially outweigh the danger of prejudice. The Government asserted that rule 404 was inapplicable in any event, because it applies only to evidence introduced to prove character, not to impeach credibility.

█ The trial court then heard argument on the defendant's motion. At the hearing, each side asserted basically the same arguments raised in their written memoranda. The court then denied the motion, stating: "Under Rule 609 the Court determines that this conviction is within the ten-year period. Consequently, the Court does determine that it is going to be allowed *for the purposes of determining credibility.*" (Emphasis added.) The court went on to note that its ruling applied only to the impeachment use of the evidence of the prior conviction. Furthermore, the court noted its willingness to reconsider its ruling under rule 403 once the defendant testified, if the defendant chose to do so. The defendant asserts that the ruling of the trial court was erroneous.[1]

The second issue on appeal concerns the jury instructions. Both sides submitted proposed instructions to the judge. The only issue raised on appeal is on "intent to defraud." The Government's proposed instruction, adopted by the district court, divided the crime of wire fraud into four essential elements and mail fraud into three essential elements. The first element of both charges was essentially the same: "that the defendant devised a scheme to defraud and to obtain money by means of fraudulent pretenses and representations." The jury instructions went on to define "scheme" as:

any plan or course of action intended to deceive others, and to obtain, by false or fraudulent pretenses, representations, or promises, money or property from persons so deceived.

A pretense or representation is "fraudulent" if it is known to be untrue ... and made or caused to be made with the intent to deceive.

A "fraudulent pretense or representation" may be made by statements of half truths or the concealment of material facts, as well as by affirmative statements or acts, if intent to defraud is present.

To do something to defraud another or, stated another way, with intent to defraud means to act with the intent to deceive or cheat .... It is not necessary, however, to prove that anyone was in fact defrauded so long as it is established that the defendant acted "with intent to defraud." An intent to defraud may be proved by the conduct of that defendant and by all the facts and circumstances surrounding the case.

The contents of the [letter or telephone conversation] itself need not disclose any intent to defraud, nor need it show on its face that it was [mailed or made] in furtherance of a scheme to defraud and obtain money by means of fraudulent pretenses and representations. But it is necessary that the evidence in this case establish beyond a reasonable doubt that the defendant in question knowingly caused the letter to be mailed with intent to carry out some significant part of the scheme to defraud and obtain money by means of fraudulent pretenses and representations.

The defendant's proposed jury instructions cited to the same provision of Devitt & Blackmar, Federal Jury Practice and Instructions § 47.04 (3d ed. 1977), from which the Government derived its proposed instructions as to the definitions of "scheme," "fraudulent," and "fraudulent

---

1. The defendant, in fact, did not testify. The issue, however, is properly before us for review as it may be presumed he would have testified if the motion had been granted. *United States v. Kiendra,* 663 F.2d 349, 352 (1st Cir.1981).

pretense or representation." The balance of the defendant's proposed charge on the issue of intent reads as follows:

Defraud—Defined. The word defraud is used in its ordinary sense. It means to injure or prejudice and damage in a pecuniary way. Fraud means to cheat someone; to obtain their property by trick, deceit or chicanery. There must be evidence from which it may be inferred that some actual injury to the victim, however slight, was a reasonably probable result of the trick, deceit or chicanery if it was successful. The question is, did the defendant intend to defraud?

Even though some individuals may have lost money by the transactions shown in evidence, it would not constitute a scheme to defraud unless it was designed and intended by the defendant that those persons should so lose money and should be so injured by the trick or plan which was carried into effect.

A fraudulent intent is necessary to sustain a charge of a scheme to defraud.

Additionally, the defendant filed a written objection to the Government's proposed wire fraud instructions, alleging that the proposal "fails to instruct the jury that it is not enough that the Government show that people lost money in order to prove a scheme to defraud or the intent to defraud, but rather that it must be proven beyond a reasonable doubt that the defendant acted with the intent to deceive or cheat another person." Interestingly, the defendant did not assert the same objection to the Government's proposed mail fraud instructions, which contained the identical "scheme to defraud" element to which the defendant objected.

The Government then filed objections to the defendant's proposed instructions, stating that the defendant's proposal

was not consistent with the definition of intent to defraud given in *Devitt and Blackmar*, § 47.08, which is in large measure acceptable to the government. The [defendant's] instruction seems to require that the injury to the victim had to have been intended. That is not the law .... [A]n intent to bring about financial gain to one's self is enough.[2]

During the course of trial, the parties discussed the instructions with the trial judge on two occasions. At neither time did the defendant object to the refusal of the judge to give the defendant's proposed "scheme to defraud" instructions. In the second discussion of the instructions, the defendant made no objection to the instructions upon the basis of any alleged error with respect to the issue of intent. During the first discussion, however, the defendant again objected to the Government's proposed wire fraud instruction upon the basis that it failed to include a statement that "it must be proved beyond a reasonable doubt that the defendant acted with the intent to deceive or defraud other persons." The Government responded that "the very element requires an intent to defraud. The Jury is told that that's an element .... That's the correct statement of the law. And I have cited Devitt and Blackmar for that. The law punishes an intent to defraud." With that, the trial court dismissed the defendant's objection. Once again, the defendant made no objection to the mail fraud instruction upon the basis of the "intent" element. Finally, as to the fictitious name charges in the indictment, upon which the jury acquitted the defendant, the Government agreed to substitute "with the intent of ... carrying on a scheme to defraud" for its proposed phraseology, "for the purposes of ... carrying

---

**2.** Section 47.08 of *Devitt and Blackmar* defines intent to defraud in two paragraphs, the first of which is nearly identical to the last paragraph of the Government's proposed instruction quoted above. The second paragraph of that section, proposed by neither of the litigants, states: "To act with 'intent to defraud' means to act knowingly and with the specific intent to deceive, ordinarily for the purpose of either causing some financial loss to another, or bringing about some financial gain to one's self." The Committee on Federal Criminal Jury Instructions of the Seventh Circuit recommends against instructing as to the distinction between specific and general intent. Federal Criminal Jury Instructions of the Seventh Circuit § 6.02 (1980).

on a scheme to defraud." The Government indicated that it thought the two phraseologies were synonymous.

## III. THE EVIDENTIARY RULING

The defendant claims error in the alleged failure of the trial court to balance the probative value of his prior conviction against its prejudicial impact. Rather, the defendant claims, the trial court applied a mechanical ten-year test of admissibility to conclude that evidence of the prior conviction was admissible, and "made no ruling" under the rule 609(a)(2) of the Federal Rules of Evidence. The defendant cites *United States v. Mahone*, 537 F.2d 922, 929 (7th Cir.1976), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 for the proposition that a trial court must articulate the balance between probative value and prejudicial effect. Furthermore, the defendant correctly asserts that this court has specifically reserved the issue "whether district courts retain the residual discretion under Rule 403 to exclude a prior conviction admissible under Rule 609(a)(2)." *United States v. Papia*, 560 F.2d 827, 845 n. 10 (7th Cir.1977).

In response, the Government asserts, first, that the court did in fact apply a balancing test and, alternatively, that the court did not need to balance probativeness and prejudice because the prior conviction was automatically admissible under rule 609(a)(2). Although we have substantial doubt about the Government's first assertion, we need not address that issue because we find its second assertion to be compelling.

The fatal flaw in the defendant's argument is that he seems to ignore the plain language of rule 609(a)(2). Whereas rule 609(a)(1) allows admission of evidence of most prior felony convictions only if the probative value of the evidence outweighs its prejudicial effect, rule 609(a)(2) states that evidence of a conviction involving "dishonesty or false statement" is admissible to impeach the credibility of a witness without requiring any balance of probative value and prejudicial effect. The cases upon which the defendant principally relies are thus inapposite to the present appeal. Specifically, *Mahone* involved the question of the need for an explicit balancing process under rule 609(a)(1), which clearly requires that such a process take place. *Papia* discussed the question whether theft is an act of "dishonesty" under rule 609(a)(2), while reserving the question presently before us. As the Government asserts, and the defendant nowhere contests, there is no doubt that mail fraud involves "dishonesty or false statement" for rule 609 purposes. *United States v. Toney*, 615 F.2d 277, 279 (5th Cir.1980), *cert. denied*, 449 U.S. 985, 101 S.Ct. 403, 66 L.Ed.2d 248. Consequently, rule 609(a)(2) governs this issue.

We therefore address the question left unresolved in *Papia*. Since the decision in *Papia*, all circuits that have decided the issue have ruled that evidence of prior convictions for crimes involving "dishonesty or false statement" is admissible without a balancing of probative value versus prejudicial effect. *See, e.g., United States v. Wong*, 703 F.2d 65, 66–68 (3d Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 140, 78 L.Ed.2d 132; *United States v. Kiendra*, 663 F.2d 349, 354 (1st Cir.1981); *United States v. Leyva*, 659 F.2d 118, 122 (9th Cir.1981), *cert. denied*, 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982); *United States v. Toney*, 615 F.2d at 279. *See also United States v. Smith*, 551 F.2d 348, 365 (D.C.Cir.1976) (same result in pre-*Papia* case).

The Third Circuit in *Wong* undertook an extensive examination of the legislative history of rule 609(a) to reach its conclusion. Two citations from the legislative background of the rule suffice to demonstrate the propriety of the prevailing view. The Conference Report states: "The admission of prior convictions involving dishonesty and false statement is not within the discretion of the court. Such convictions are peculiarly probative of credibility and, under this rule, are always to be admitted." H.R.Rep. No. 1597, 93d Cong., 2d Sess. 9, *reprinted in* 1974 U.S.Code Cong. & Ad. News 7051, 7098, 7103. The chairman of

the Conference Committee, in commenting upon the final version of rule 609(a), similarly stated: "The conference rule provides that evidence of a conviction of a crime involving dishonesty or false statement may *always* be used to impeach." 120 Cong.Rec. 40,891 (1974) (statement of Rep. Hungate), *reprinted in* 1974 U.S.Code Cong. & Ad.News 7108, 7110–11 (emphasis added).

■ Furthermore, the First Circuit in *Kiendra* persuasively resolves any residual doubt about the possible conflict between rules 403 and 609(a)(2), upon which the defendant bases his claim that a trial court must always balance probativeness against prejudice. Rule 403 is the general evidentiary provision that permits the exclusion ·of relevant evidence that "is substantially outweighed by the danger of unfair prejudice" to the defendant. As the First Circuit demonstrated, rule 609 controls any conflict between the provision in rule 403 that, "although relevant, evidence *may be excluded* if its probative value is substantially outweighed" and the provision in rule 609(a)(2) that "evidence that he has been convicted of a crime *shall be admitted* ... but only if the crime ... involved dishonesty or false statement." (Emphases added.) The court stated: "Rule 403 is a general provision intended to govern a wide landscape of evidentiary concerns; Rule 609 is a narrow provision intended to regulate the impeachment of witnesses who have been convicted of prior crimes." *United States v. Kiendra*, 663 F.2d at 354. As is generally true in matters of statutory construction, here the specific language of rule 609 controls over the general language of rule 403. *See Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704 (1932).

Finally, we note a revision made in rule 609 between a draft provision and the final version of the rule. As originally drafted, the rule provided for admission of a prior conviction only if it was a felony or a crime involving dishonesty or false statement unless, *"in either case,* the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice." 51 F.R.D. 315, 391 (1971) (emphasis added). Significantly, in its final form, the "particularized application" of rule 403, *see* 51 F.R.D. at 393, applied only to rule 609(a)(1), relating to prior felony convictions, and not to the crimes of dishonesty encompassed in rule 609(a)(2).

■ Therefore, we hold that the trial court had no discretion to prevent introduction, for impeachment purposes, of evidence of prior convictions for crimes involving dishonesty or false statement, subject only to the ten-year time limit embodied in rule 609(b). In the present case, since the defendant's present trial occurred in February 1983, and the prior conviction was on September 27, 1973, from which he was released in December 1974, both the conviction and release were well within the ten-year time limit of rule 609(b). Consequently, the district court properly denied the defendant's motion *in limine.*

## IV. THE INSTRUCTIONS

### A. Preservation of Alleged Error

The defendant asserts that he preserved all issues related to the propriety of the trial court's intent instructions in two ways: by submitting his own instruction on the question of intent to defraud and by objecting to the Government's instructions on the issue. Rule 30 of the Federal Rules of Criminal Procedure sets forth the duty imposed upon a party who later claims error arising out of jury instructions: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds for his objection." If we determine that the defendant did not preserve the issue, then we must examine the jury charge, reversing the conviction only if there was plain error. Fed.R.Crim.P. 52(b).

The defendant claims error in the failure to give the instruction that he requested and in the court's decision to give the

Government's proposed instruction, which allegedly failed to instruct that intent to defraud is an essential element of both wire and mail fraud. Although neither party made any distinction, we must treat the wire fraud instructions separately from the mail fraud instructions for reasons that will become apparent below.

■ The Government claims that the defendant did not preserve any of the alleged errors in the instructions. The Government overstates its case, however, in respect to the wire fraud charge. The defendant objected both in writing and in the instruction conference to the wire fraud instruction upon the basis that the instruction erroneously omitted from the charge that "it must be proven beyond a reasonable doubt that the defendant acted with the intent to deceive or defraud other persons." Although the defendant did not specifically request below that the "intent to defraud" element should be listed as a separate essential element, the objection he did make was sufficiently distinct to satisfy the requirements of rule 30. The defendant made clear his contention that "intent to defraud" should be defined in an instruction independent of the rest of the charge. Consequently, we must examine the propriety of the wire fraud instructions in light of all the instructions considered as a whole. *United States v. Johnson*, 605 F.2d 1025, 1027 (7th Cir.1979) (en banc), *cert. denied*, 444 U.S. 1033, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980).

■ The other two of the defendant's claims that the intent instructions constituted reversible error lie in the trial court's refusal to give the defendant's proposed intent instruction and in the failure to list "intent to defraud" as a separate essential element of the mail fraud charge. As to the alleged error in the trial court's failure to give the defendant's proposed instruction, the defendant failed to preserve the issue for appeal. The defendant's written proposal contained such statements as "The question is, did the defendant intend to defraud?" and "A fraudulent intent is necessary to sustain a charge of a scheme to defraud." After making the written proposal, however, the defendant never mentioned his proposed language in any of the subsequent proceedings, including the two conferences at which the parties and the trial court discussed instructions.

As we have previously held, a trial court's refusal to give a party's proposed instruction does not by itself satisfy the requirements of rule 30 if the party takes no further action.

> The mere offer of the instruction does not preserve the error for appeal. If the party whose tendered instruction is refused fails to object to the refusal, stating distinctly the grounds of his objection, the Court of Appeals may review the refusal to instruct only to determine whether it constituted plain error within the meaning of Fed.R.Crim.P. 52(b).

*United States v. Gratton*, 525 F.2d 1161, 1163 (7th Cir.1975). The rationale underlying the requirement of a distinct statement of objection is, of course, to draw the attention of the trial court to the alleged error at a time when the court is able to rectify the error. *United States v. Jackson*, 569 F.2d 1003, 1009 (7th Cir.1978). The defendant has pointed to nothing, and our independent review of the record has revealed nothing, that even the most liberal reading of the record could indicate that the defendant objected to the trial court's refusal to give his proposed instruction. Consequently, we must determine whether that refusal amounted to plain error.

■ Similarly, the defendant waived any objection to the failure to list "intent to defraud" as a separate essential element of the mail fraud counts. In the written objections to the Government's proposed instructions, defense counsel specifically confined his comments to "Government's Request No. 3." Then, in the defendant's objection to the intent instruction during the instruction conference, the defense counsel referred only to "page 6" of the Government's proposed instructions. Page six is in "Government's Request No. 3." That request is clearly limited to the wire fraud counts of the indictment. A differ-

ent request delineated the Government's proposed instructions on the mail fraud counts. In fact, the defendant made no written objection to the Government's proposed instruction concerning mail fraud, nor did counsel assert the intent objection in his extensive objections to the mail fraud instructions at the instructions conference. Therefore, the defendant failed to preserve the intent objection to the mail fraud instruction. Consequently, the only way the mail fraud instruction could result in reversal of the defendant's conviction is if the tendered instruction amounted to plain error.

Ordinarily then we would examine under the plain error doctrine the alleged errors in both the refusal to give the defendant's proposed instruction and the intent instructions of the mail fraud counts. Doing so here, however, is unnecessary. We have already found that the defendant properly preserved his objection to the intent element of the wire fraud charges. The two waived objections address the identical issue as the one properly preserved. Furthermore, we note that the prerequisites for establishing intent to defraud are identical for both wire and mail fraud. *United States v. Lemire,* 720 F.2d 1327, 1334–35 n. 6 (D.C.Cir.1983). Consequently, if there was no error in the intent instruction in the wire fraud instructions, then, as a matter of course, there can be no plain error with respect to the waived objections.

### B. Was There Error?

To determine if there was error in the failure of the wire fraud instructions to include "intent to defraud" as a separate element, we must consider all the instructions as a whole. *United States v. Johnson,* 605 F.2d at 1027. The problem that the defendant implicitly asserts is that the instructions failed to apprise the jury of the *mens rea* necessary to establish wire fraud. The assertion is clearly without merit.

The first essential element enumerated in the instructions was that the defendant "devised a scheme to defraud." The in-

structions then defined scheme as a plan "intended to deceive" and fraudulent pretense as "statements of half truths or the concealment of material facts ... if intent to defraud is present." The instructions continued:

> To do something to defraud another or, stated another way, with intent to defraud means to act with the intent to deceive or cheat .... It is not necessary, however, to prove that anyone was in fact defrauded so long as it established that the defendant acted "with intent to defraud."

Finally, the instructions charged, with respect to "scheme to defraud," that "it is necessary that the evidence in this case establish beyond a reasonable doubt that the defendant in question knowingly caused the sounds to be transmitted with intent to carry out some significant part of the scheme to defraud ...."

Thus, within the definition of the statutory *mens rea* requirement of a "scheme to defraud," the instructions mention "intent to deceive" once, "intent to defraud" three times, and "intent to carry out ... the scheme to defraud" once. To assert, as the defendant does, that the instructions did not impose upon the Government the burden to prove intent to defraud as an essential element of the wire fraud charges is to stretch the bounds of credible argument beyond limits. Indeed, comparison of the tendered instructions with the defendant's proposed instructions reflects, other than that the defendant's proposal was wordier, only minimal differences in the definitions of intent to defraud.

We conclude that the tendered instructions were not erroneous with respect to the intent requirement of the wire fraud counts. We note the similarity between the instructions given by the court below and those approved by the court in *United States v. Feldman,* 711 F.2d 758 (7th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 352, 78 L.Ed.2d 317. In *Feldman,* we concluded:

> While the instructions were less than ideal because the phrase "intent to de-

fraud," although it was defined, did not appear in so many words in the burden of proof instructions, we believe that the instructions, considered as a whole, sufficiently apprised the jury that they could convict Feldman only if they found that he committed the acts charged as part of the scheme to defraud with the specific purpose of defrauding [the victim].

*Id.* at 765. We reach a similar conclusion here. Furthermore, since there is no error in the wire fraud intent instruction, there can be no plain error premised upon the identical intent instruction under the mail fraud counts or in the failure to give the defendant's proposed intent instructions.

We have considered all the other arguments of the defendant and find them to be without merit. Accordingly, the defendant's convictions are

AFFIRMED.