**UNITED STATES of America**

v.

**DUNBAR, Marty, Appellant.**

**No. 85–1045.**

United States Court of Appeals,
Third Circuit.

Argued June 18, 1985.
Decided July 19, 1985.

Carol A. Koller, Defender Ass'n of Philadelphia, Federal Courts Div. Philadelphia, Pa., for appellant.

Anne Whatley Chain, Asst. U.S. Atty. (argued), Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Philadelphia, Pa., for appellee.

Before ADAMS and HUNTER, Circuit Judges, and FISHER,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

On August 16, 1984, a federal jury returned a guilty verdict against Marty Dunbar on charges of bank robbery and conspiracy to commit bank robbery. The trial court sentenced him to eight years in prison on one count and three years probation after his jail term expired on the second count. Dunbar appeals his conviction, claiming that the trial court made four erroneous rulings during the trial, entitling him to a new trial. We hold that the trial

court acted properly in all respects, and will affirm Dunbar's conviction.

The parties all agree that a bank robbery occurred at the Philadelphia Saving Fund Society bank branch at 11th Street and Lehigh Avenue in Philadelphia, Pennsylvania at about 10:00 a.m. on March 13, 1984. During the robbery, the bank's surveillance cameras took pictures of the robber. Two days after the robbery, the victim teller, Peggy Montgomery, identified the person in the surveillance photographs as the robber. The robber wore a beard and a cap. Later, the police showed Montgomery a photographic array containing six photographs, each retouched to show the suspect with a beard and cap exactly like the one in the surveillance photograph. Montgomery picked Dunbar's photograph from the six and identified him as the robber. At trial, Montgomery testified about her prior identification of the robber from the surveillance picture and from the photographic display. She also identified him in the courtroom. Another teller, Jacqueline Roberts, who had seen the robber, also testified that she had identified Dunbar from the photographic display.

In addition to the identifications made by the two bank tellers, Dwight Flowers, a friend of Dunbar's, testified at trial that Dunbar arrived at his aunt's house at about 10:00 a.m. on the day of the robbery, and confessed to Flowers that he and two other men had robbed the bank. Dunbar also showed the stolen money to Flowers and told Flowers that he was going back to Pittsburgh. Flowers testified that on the date of the robbery Dunbar had a beard. As an alibi, Dunbar stated that he had been in Pittsburgh throughout the day, but the witnesses located him in Pittsburgh only after 7:00 p.m., providing him with adequate time to return there after the robbery.

Dunbar first argues that the district court erred when it refused to suppress Montgomery's and Roberts's photographic

* Honorable Clarkson S. Fisher, United States District Judge for the District of New Jersey, sitting by designation.

and in-court identifications. Appellant attempts to persuade this court that the police alteration of the photographs of all six persons to include a beard and a cap somehow rendered the display unduly suggestive. But as the government points out, each photograph was altered in the same way and, if anything, the alteration increased the reliability of the tellers' identification. *See Rudd v. State of Florida,* 477 F.2d 805, 811 (5th Cir.1973). We cannot say either that the "police used an impermissibly suggestive procedure in obtaining the out-of-court identification," or that "under all the circumstances, that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." *Manson v. Brathwaite,* 432 U.S. 98, 107, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977). The district court, therefore, acted properly when it refused to suppress the identifications made by Montgomery and Roberts.

Dunbar next attempts to challenge the district court's *in limine* ruling that were he to testify, his 1978 rape conviction would be admissible as impeachment evidence. His attempt fails if we apply retroactively the Supreme Court's decision in *Luce v. United States,* —— U.S. ——, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (1984). The Court held there that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." Dunbar did not testify and therefore, if *Luce* applies, may not appeal the ruling.

■ The Supreme Court has laid down three factors to be considered when we decide whether to apply a rule of law retroactively. First, the decision must not establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, the court must look at the individual case by evaluating "the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, if "retroactive application ... could produce substantial inequitable results ... there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of non-retroactivity." *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971) (citations omitted). *See also Perez v. Dana Corp.,* 718 F.2d 581, 584–88 (3d Cir.1983) (citing *Chevron* factors and applying them); *Marino v. Bowers,* 657 F.2d 1363, 1365 (3d Cir.1981) (same analysis for rulings dealing with fundamental personal rights).

■ In this case, we believe that an analysis of the *Chevron* factors leads to the conclusion that *Luce* should be applied retroactively to bar Dunbar's appeal of the district court's *in limine* ruling. First, the case did not establish a new principle of law, since at the time of Dunbar's trial, the Sixth Circuit had decided *Luce,* 713 F.2d 1236 (1983), and held that the defendant must testify in order to preserve his appeal. The position of other circuits on the issue varied. Several circuits had permitted review in this situation, *see United States v. Lipscomb,* 702 F.2d 1049, 1069 (D.C.Cir.1983) (in banc); *United States v. Kiendra,* 663 F.2d 349, 352 (1st Cir.1981); *United States v. Fountain,* 642 F.2d 1083, 1088 (7th Cir.), *cert. denied,* 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981); *United States v. Toney,* 615 F.2d 277, 279 (5th Cir.), *cert. denied,* 449 U.S. 985, 101 S.Ct. 403, 66 L.Ed.2d 248 (1980). The Ninth Circuit, in *United States v. Cook,* 608 F.2d 1175, 1186 (9th Cir.1979) (in banc), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980), allowed review only if the defendant made a record clearly indicating his intention to testify if the prior conviction was excluded, and made a proffer as to the content of his testimony. This court has only once spoken on this issue. In a footnote in *United States v. Provenzano,* 620 F.2d 985, 1002 n. 11 (3d Cir.1980), we stated that the defendant's "failure to risk admission of the prior convictions by actually testifying does not prevent him from raising the issue now on appeal." In *Provenzano,* however, the defendant made it clear to both the district court and the

Court of Appeals that he desired to testify and would have testified but for the *in limine* ruling. In the present case, Dunbar's counsel simply stated that she was "considering" whether to call the defendant as a witness. There is absolutely no basis in the record for concluding that Dunbar intended to testify and decided not to because of the *in limine* ruling. We do not believe that *Provenzano* established a Third Circuit rule that the defendant need not testify, or even make it clear to the court that he wishes to testify, in order to preserve his appeal rights. Dunbar could not, therefore, have relied on *Provenzano* to the extent of being unfairly surprised by the *Luce* decision.

The second *Chevron* factor, whether retrospective operation will further or retard the operation of the rule in light of the rule's prior history, purpose and effect, similarly leads to the conclusion that *Luce* should be applied retroactively. The Supreme Court reasoned in *Luce* that when the defendant does not testify, the reviewing court is significantly handicapped in its examination of the *in limine* ruling. The Court noted that an appellate court cannot even be certain that had the defendant testified, the Government would have introduced the prior conviction at all. In addition, the Court examined the problem of harmless error, and realized that "the appellate court could not logically term 'harmless' an error that presumptively kept the defendant from testifying," and therefore, "almost any error would result in the windfall of automatic reversal." *Luce v. United States,* — U.S. —, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (1984). All of these problems inhere in the case before us, and we believe that the rule in *Luce* should operate to prevent Dunbar from appealing the district court's *in limine* ruling. Finally, we do not believe that retroactive application of the rule will work substantial hardship upon Dunbar, since he had the opportunity to testify and could not have been relying on any existing law to the effect that he would be permitted to appeal.

■ Dunbar thirdly argues that the district court abused its discretion in admitting into evidence a police photograph of him which he claims is an "obvious mug shot" which "effectively advised" the jury that Dunbar had a prior criminal record. As the district court noted in its opinion on the post-trial motions, "the photographs were the typical profile and face forward view, [and] they contained nothing which would in any way identify them as police photos." App. at 309. The court further noted that the jury benefited in evaluating the evidence on identification by examining the photographs themselves. It made an explicit finding that "the probative value of the photospread far outweigh[ed] any potential prejudice arising from the use of side-by-side, face forward and profile photographs." App. at 310. We cannot say that the district court abused its discretion in admitting the photographs. *United States v. Hines,* 470 F.2d 225, 228–29 (3d Cir.1972), *cert. denied,* 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703 (1973); Fed.R. Evid. 403.

■ Dunbar's final objection to the district court's supervision of the trial arose from questions by the prosecutor to the F.B.I. Agent who arrested Dunbar. The prosecutor, not content with two positive identifications of Dunbar as the robber and testimony by his friend that he had confessed to the crime, offered to prove that after he had been given his *Miranda* warnings Dunbar looked at the surveillance photographs and said "that looks like me." But when asked what Dunbar said after having been given his warnings, the agent testified twice that Dunbar asked to see a lawyer. The defense objected and asked for a mistrial, but the district court overruled the objection, denied a mistrial and gave a curative instruction. The instruction reads:

> It is entirely up to a defendant in every criminal trial whether or not to testify. He has an absolute right founded on the constitution to remain silent. You must not draw any inference of guilt from the fact that the defendant did not testify,

nor should you draw any inference of guilt from the fact that a person requested the assistance of counsel before responding to any questions put to him by an investigator. That again is another one of our Constitutional rights, that is, the right to have the assistance of counsel at all times. So when a person asks for the assistance of counsel, no adverse inference can be drawn from that fact.

We note first that the circumstances under which these remarks were elicited differs dramatically and significantly from the circumstances in cases where courts have found new trials warranted. In both *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) and *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), for instance, the Supreme Court held that it was error for the prosecutor, on cross-examination, to use the defendant's silence at arrest to challenge his exculpatory testimony at trial. Dunbar did not testify here, and the prosecutor did not elicit the statement about his asking for counsel to persuade the jury to draw any adverse inferences. *See also Lakeside v. Oregon*, 435 U.S. 333, 338, 98 S.Ct. 1091, 1094, 55 L.Ed.2d 319 (1978) (proscription is against *adverse* comment on defendant's silence). Moreover, the court gave an adequate curative instruction and we believe that even if the remark by the agent rose to constitutional dimensions, the court's failure to declare a mistrial constituted harmless error beyond a reasonable doubt since the evidence against Dunbar was overwhelming. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

Accordingly, the judgment of the district court will be affirmed in all respects.

ADAMS, Circuit Judge, dissenting in part and concurring in part.

Although I concur in the Court's disposition of this appeal, I write separately to express my disagreement with the holding by the majority that *Luce v. United States*, — U.S. —, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), should be applied retroactively in the context of this case.

## I

The defendant in the present proceeding was accused of bank robbery and conspiracy. His defense was based largely on an alibi; he claimed to have been in Pittsburgh at the time of the crime. While several of his witnesses helped to establish his alibi, as is often the situation with such a defense the defendant's own testimony would have been of considerable importance. Dunbar, however, had a prior conviction for rape. His counsel believed that if admissible under Fed.R.Evid. 609, there was substantial danger that such conviction would serve as devastating impeachment evidence against Dunbar.

With that possibility in mind the defense attorney moved prior to trial to exclude evidence of Dunbar's prior rape conviction. The district court postponed ruling on that request until the issue arose at the trial. App. at 71. At a sidebar conference requested by the defense during the final stages of the presentation of the case for the defendant, the district court did in fact rule on the issue, holding that if Dunbar were to testify, the rape conviction would be admissible.

At the time of the trial, the rule governing the necessity of testifying in order to preserve for appellate review the question of the admissibility of a prior conviction was set forth, at least for the Third Circuit, in *United States v. Provenzano*, 620 F.2d 985, 1002 n. 22 (3d Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980). In *Provenzano* this Court declared that a defendant's failure to risk admission of a prior conviction "by actually testifying did *not* prevent him from raising the issue on appeal." (emphasis added). One court of appeals had held that it was necessary for the defendant to testify in order to preserve the point for appeal. *See Luce v. United States*, 713 F.2d 1236 (6th Cir.1983). Five other courts of appeals had held to the contrary. *See United States v. Lipscomb*, 702 F.2d 1049 (D.C.Cir.1983) (in banc);

*United States v. Kiendra,* 663 F.2d 349 (1st Cir.1981); *United States v. Fountain,* 642 F.2d 1083 (7th Cir.), *cert. denied,* 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981); *United States v. Toney,* 615 F.2d 277 (5th Cir.), *cert. denied,* 449 U.S. 985, 101 S.Ct. 403, 66 L.Ed.2d 248 (1980); *United States v. Cavender,* 578 F.2d 528 (4th Cir.1978).

Immediately following the district court's decision to permit the impeachment evidence, the defense rested; Dunbar did not testify. The jury returned a verdict of guilty, and the defendant appealed to this court asserting *inter alia* the district court's ruling regarding the use of the prior rape conviction. After the appeal was filed and while the case was awaiting disposition, the Supreme Court handed down its opinion in *Luce v. United States,* — U.S. —, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). In *Luce,* the Supreme Court held that in order for a defendant to preserve an objection of this type, he or she must actually testify. As a result of the Supreme Court's holding, we must decide whether we should apply *Luce* retroactively.

## II

As the majority notes, the Supreme Court has established a three-prong test for determining whether to apply a rule of law retrospectively. *See Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The first factor is whether the decision has established a new principle of law, by overruling clear past precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed. The next involves an assessment of whether retroactive application will further the purposes of the rule. Finally, the court must consider whether retroactive application would produce substantial injustice or hardship. It is with the application of the first factor, whether the decision in *Luce* established a new principle of law, and with the third, whether substantial unfairness would result, that I have concerns.

The Supreme Court has established different criteria for guiding resolution of the question whether new constitutional and criminal procedure decisions should be applied retroactively. *E.g., Solem v. Stumes,* 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984). The Court has stated that the purpose to be served by the new standard, the extent law enforcement authorities have relied on the old standards, and the effect on the administration of justice of the retroactive application of the new standard should be weighed. *Id.* In applying this test, courts have emphasized that where the major purpose of a new rule is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function, retroactivity probably should be accorded. *See, e.g., United States ex rel. Cannon v. Johnson,* 536 F.2d 1013 (3d Cir.), *cert. denied,* 429 U.S. 928, 97 S.Ct. 334, 50 L.Ed.2d 298 (1976). No truth-finding function is involved here.

While the present case arises in the criminal context, use of the rule in *Chevron* would appear to be proper. Essentially, at stake is the question of what steps a party must take to preserve an evidentiary issue for appellate review. Illustrative in this regard is *West v. Keve,* 721 F.2d 91 (3d Cir.1983). There we applied the *Chevron* test to the question of the retroactivity of a decision holding that in order to preserve an appeal on the merits, litigants must file a cautionary appeal from a predicate decision on the merits, notwithstanding the pendency of an attorney fees petition. The existence of the criminal context should, nevertheless, properly influence our application of the *Chevron* factors, particularly the fairness concern.

The majority asserts that *Luce* did not establish a new principle of law since at the time of Dunbar's trial the Sixth Circuit had decided that a defendant must take the stand in order to preserve for appeal his contention regarding impeachment by prior conviction. However, where there is disagreement among the courts of appeals, as there was here, I take it that the rule in *this* Circuit as well as the predominant

view of the majority of courts of appeals would be our most instructive guidepost.

As noted, the governing rule in this Circuit had been laid down in *Provenzano*, in which we held that a failure to testify did not prevent the defendant from raising the impeachment issue on appeal. While the majority today claims that *Provenzano* did *not* establish a Third Circuit rule that the defendant need not testify in order to preserve his contention, from the standpoint of a defendant like Dunbar the *Provenzano* court's statements cannot fairly be read in any other manner. Indeed, the opinion in *Provenzano* has been interpreted in that fashion by the other courts of appeals that have addressed the appealability issue. *E.g., United States v. Lipscomb,* 702 F.2d 1049, 1069 n. 71 (D.C.Cir.1983) (in banc).

As a fallback position, the majority suggests that it was crucial in *Provenzano* that the defendant had made clear his intention to testify, with a degree of certainty that is lacking in the present case. But, that would appear to read far too much, I believe, into the Court's simple statement that "Provenzano desired to testify...." 620 F.2d at 1002. Significantly the *Provenzano* court did not cite the Ninth Circuit's rule that in order to preserve his point on appeal, a defendant must have made a record clearly indicating a definite intention to testify if the prior conviction was excluded. *See United States v. Cook,* 608 F.2d 1175 (9th Cir.1979) (in banc), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980). Indeed, the correct construction of *Provenzano* is clearly suggested by the fact that the panel in that case cited the less stringent rule of *United States v. Cavender,* 578 F.2d 528 (4th Cir. 1978) and of *United States v. Smith,* 551 F.2d 348 (D.C.Cir.1976). *See also United States v. Lipscomb,* 702 F.2d 1049, 1069 (D.C.Cir.1983) (in banc). Moreover, in the present case the district court had ruled on the admissibility of Dunbar's prior conviction at a sidebar conference requested by the defendant during the presentation of the case for the defense. Immediately following the district court's decision to permit the impeachment evidence, Dunbar rested. It is unrealistic to believe that the defense would have raised the issue at that juncture if the defendant had no intention of testifying. App. at 210–11.

In addition to the decisions of the courts of appeals cited in *Provenzano,* and in contradistinction to the isolated Sixth Circuit holding, a number of other courts of appeals had permitted review even when the defendant—as here—did not take the witness stand. *See United States v. Kiendra,* 663 F.2d 349 (1st Cir.1981); *United States v. Fountain,* 642 F.2d 1083 (7th Cir.), *cert. denied,* 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981); *United States v. Toney,* 615 F.2d 277 (5th Cir.), *cert. denied,* 449 U.S. 985, 101 S.Ct. 403, 66 L.Ed.2d 248 (1980). Thus, I would hold that the Supreme Court in *Luce* did overrule clear past precedent.

Given this Court's previous statement in *Provenzano* and the views of the significant majority of other courts of appeals, defense counsel in the position of Dunbar's would have reasonably concluded that the defendant need not testify in order to preserve appellate review of the impeachment issue. This would seem particularly understandable since, if counsel had put Dunbar on the stand, the highly prejudicial effect of the previous rape conviction would have gone directly to the jury. To deny appellate review of the question because of the subsequent Supreme Court decision in *Luce* would be, as I view it, unjust to the defendant. Accordingly, I would hold that out of concern for fairness *Luce* should not be applied retroactively in this case.

## III

Despite the foregoing discussion of retroactivity, I would concur with the result reached by the Court today. Even if the district court erred in stating that it would permit admission of Dunbar's prior conviction—a close question—the error was harmless in light of the very substantial evidence against the defendant that was presented by the prosecution.