**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**George E. VEILLETTE, Jr.,
Defendant, Appellant.**

**No. 85–1127.**

United States Court of Appeals,
First Circuit.

Argued Aug. 7, 1985.
Decided Dec. 2, 1985.

Daniel W. Bates, with whom Daniel G. Lilley, Portland, Me., was on brief, for defendant, appellant.

Margaret McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., Portland, Me., and Jay P. McCloskey, Asst. U.S. Atty., Bangor, Me., were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

This appeal arises out of an indictment charging nineteen persons with conspiracy to possess over a thousand pounds of marihuana with the intent to distribute the drug. *See* 21 U.S.C. § 841 and 846. It was the government's position that the conspirators were involved in the purchase and sale of a large supply of marihuana which was kept near Bangor, Maine. Eleven of the nineteen were tried by a jury. The convicted defendants, with the exception of the herein appellant Veillette, who fled following conviction, were sentenced on May 16, 1984. Their convictions were upheld by this court. *See United States v. Anello*, 765 F.2d 253 (1st Cir.1985).

Veillette raises three issues on appeal. First, he claims that the district court erred in failing to suppress evidence found and seized in his motorcycle shop. Second, he claims that his right to a speedy trial was violated and, finally, that the court should have declared a mistrial based on juror misconduct. These last two issues were raised on appeal by Veillette's codefendants and carefully examined by us. We reject these claims here for the same reasons stated in the *Anello* opinion, *supra*.

On July 29, 1982, the Drug Enforcement Administration in Maine received information that 40,000 pounds of marihuana were en route to that state. Drug Enforcement Administration agents waited for two of the principal participants to arrive at the airport and followed them to their hotel, where aural surveillance was established. This was supplemented by the physical surveillance of the various persons believed to be involved, as well as of the premises known as Thee Motorcycle Shoppe (Shoppe), which was owned by suspect George Veillette and which was believed to be the stash house for the contraband.

On July 4, 1982, the day chosen to close in on the operation, a yellow truck that had been under surveillance was backed up to the Shoppe. After a period of ten to thirty minutes during which the truck was apparently loaded, it drove away and headed south from Bucksport, Maine on an interstate highway. When the truck reached a point on the road that was out of range of radio contact with those sites from which the conspirators could call to warn others, the agents stopped and searched the vehicle. They discovered numerous bales of marihuana in the truck.

Between 2:00 and 2:30 PM that same day, D.E.A. agents met with police officers to coordinate arrest strategy, with a goal to ensuring surprise and "securing" certain places for search through several simultaneous raids.

About one hour later, a team of eight to ten law enforcement agents arrived at the Shoppe. Although several vehicles were parked in the parking lot, the vehicles that police knew belonged to the appellant were not among them. Several officers walked around to the south side of the building. They noticed that the windows on the lower portion of the Shoppe were covered with an opaque black material. The door was locked, the sign on it indicating that the business was closed. Sergeant Bailey knocked on the front door and announced the officers' presence. There was no response. Nothing was seen or heard from the outside to indicate that anyone was there. Bailey shattered the glass of the door with a cinder block and several officers entered the premises. Searching the main floor area only in places large enough to hide a person, the officers found no one. Proceeding to the lower level, they spotted Veillette's pickup truck parked inside the garage. Bailey unsnapped the tarp which completely covered the truck bed and discovered marihuana bales. He replaced the tarp and went upstairs, leaving the contraband where it was found. Having secured the Shoppe, the officers left it under guard until a search warrant was obtained on the evening of July 6, 1982.

■ Warrantless searches,[1] although ordinarily presumed to be unreasonable, *Coolidge v. New Hampshire,* 403 U.S. 443, 479, 91 S.Ct. 2022, 2044, 29 L.Ed.2d 564 (1971); *United States v. Picariello,* 568 F.2d 222, 225 (1st Cir.1978), are constitutional if the government establishes the requisite exigent circumstances. *See Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984); *United States v. Baldacchino,* 762 F.2d 170, 176 (1st Cir.1985); *United States v. Irizarry,*

673 F.2d 554, 557 (1st Cir.1982). In determining whether the circumstances of a case fall into one of the emergency conditions characterized as exigent circumstances, the court must consider: the gravity of the underlying offense; whether delay poses a threat to police or the public safety; whether there is a *great* likelihood that evidence will be destroyed if there is a delay until a warrant can be obtained. *United States v. Baldacchino, supra,* at 176. *See also Welsh v. Wisconsin, supra,* 104 S.Ct., at 2098; *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *United States v. McConney,* 728 F.2d 1195 (9th Cir.1984).

Following a suppression hearing the district court held that exigent circumstances existed for entering the premises. It went on to find, however, that the truck bed concealing the marihuana was secured in such a way that no one could have been hiding under it. Therefore, finding that specific search illegal, the district court suppressed only that particular evidence.

■ The standard of review of an appeal from denial of a motion to suppress is that the decision will be upheld if any reasonable view of the evidence supports the trial court's decision. *United States v. Kiendra,* 663 F.2d 349, 351 (1st Cir.1981).

■ In reviewing the evidence in light of the totality of the circumstances, we do not find the exigent circumstances present to justify the officers' forcible intrusion into the Shoppe.[2] The police had in custody the only persons capable of warning other co-conspirators prior to the simultaneous raids, and precautions had been taken to prevent such a warning. At the time of the raid they neither saw nor heard anything that would indicate that the prem-

---

1. The measures taken to secure the Shoppe constitute a search. *See U.S. v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). (A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed).

2. Even when an exigency is found, the least restrictive intrusion must be employed, or the whole constitutional requirement of obtaining a

warrant would be defeated. When it is known that no one is presently on the premises, the property may be secured by merely guarding the entrances. *United States v. Palumbo,* 742 F.2d 656 (1st Cir.1984). In the case at bar, it appeared more likely than not that the premises were unoccupied and the possibility of persons hiding in the basement was speculation.

ises were occupied. We cannot, therefore, reasonably conclude that the alternative of securing the building from the outside without prior intrusion presented a demonstrable risk to the officers or a great likelihood that evidence would be destroyed. The district court did not make specific findings on the matter, but rather speculated on various possibilities that might have given the police "reason to believe" that exigent circumstances existed. This does not create the conditions necessary to overcome the need to obtain a warrant.

■ Appellant argues that, because the search warrant was partially based on evidence obtained in the illegal search, probable cause was lacking. Therefore, all evidence seized under that warrant is alleged to be "fruit of the poisonous tree" and should be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963). We do not agree. Initially, we find there was sufficient probable cause to stop and search the yellow truck that was found to contain numerous bales of marihuana. The movements of the alleged conspirators and their conversations overheard well in advance of the decision to stop the truck clearly indicated that a drug deal was in progress. The positioning of the truck at the Shoppe for what appeared to be loading strongly supported the belief that it was being used at that time to transport the contraband. Although there were no bales of marihuana visible at the time, there was every reason to believe the conspirators were carrying out their plans. Therefore, we find no objection to the use of this evidence as support for probable cause to issue the search warrant for the Shoppe. Moreover, the conversations between the suspects to which D.E.A. Agent Cunniff attests in his affidavit amply support the probability that the Shoppe was a central location for the organization of the conspiracy and that it was being used to stash the contraband.

We, therefore, have little difficulty finding that the warrant to search the Shoppe was adequately supported.

■ We also find the duration of the seizure of the Shoppe, from 3:30 PM on July 4th until the search warrant was issued July 6th, was not unreasonable within the meaning of the fourth amendment. The arrests and raids occurred on a Sunday and the following Monday was a legal holiday. The record shows that Veillette was arrested shortly after the Shoppe was secured, so that any actual interference with his possessory interest in the premises was virtually nonexistent. See *Segura v. United States*, — U.S. —, 104 S.Ct. 3380, 3390, 82 L.Ed.2d 599 (1984). In view of the complex circumstances of the case, we do not find the delay unreasonable.[3]

Whether all the evidence obtained at the Shoppe need be suppressed is controlled by *Segura, supra*. The question in *Segura* was

> [W]hether, because of an earlier illegal entry, the Fourth Amendment requires suppression of evidence seized later ... pursuant to a valid search warrant which was issued on information obtained by police before the entry into the residence.

*Segura, supra* at 3382.

The court held that

> [T]he evidence discovered during the subsequent search of the apartment the following day pursuant to the valid search warrant issued wholly on information known to the officers before the entry into the apartment need not have been suppressed as "fruit" of the illegal entry because the warrant and the information on which it was based were unrelated to the entry and therefore constituted an independent source for the evidence under *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, [40 S.Ct. 182, 64 L.Ed. 319] (1920).

*Id.* at 3383.

In the case at bar, excluding the already suppressed evidence found on the premises,

---

**3.** This is not to say, however, that we will generally condone such lengthy delays. While the delay here was acceptable under the particular circumstances of the case, future cases will continue to be judged in light of their specific facts.

the affidavit squarely rests on evidence obtained prior to the illegal entry. That evidence, in our view, was more than adequate in itself to establish probable cause for issuance of a search warrant. In *Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978), the Supreme Court held that, if an affiant knowingly includes a false statement in a warrant affidavit, the warrant will stand if, "when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause."

■ Knowingly including a false statement in a warrant affidavit seems the functional equivalent of (if not an even more serious transgression than) including in the affidavit knowledge of facts illegally obtained. Logically, then, the bales of marihuana that were improperly included in the warrant affidavit here should be dealt with in a similar fashion, i.e., they should be set to one side (as the district court did) and the remaining content of the affidavit examined to determine whether there was probable cause to search, apart from the tainted averments.

■ To be sure, unlike the situation in *Segura v. United States*, —— U.S. ——, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) and our own recent case of *United States v. Moscatiello*, 771 F.2d 589 (1st Cir.1985), the tainted evidence here was included in the warrant affidavit and thus reached the magistrate. However, the approach we follow, taken from *Franks*, is squarely within the Supreme Court's recent admonition that "the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse*, position than they would have been if no police error or misconduct had occurred." *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (discussing independent source doctrine) (emphasis in original). We therefore affirm the district court's refusal to suppress all of the evidence obtained pursuant to the search warrant for the Shoppe.

■ In a last ditch effort to convince us that something, anything, should be suppressed, appellant challenges the specificity of the warrant, including in his brief a long list of items seized, that he claims do not fall within any of the categories listed in the warrant. The government conceded that some of the items seized were beyond the scope of the warrant. The court found, however, that many of these items did fit categories such as "marihuana handling and processing equipment" and "documents such as ... tally lists, personal (sic) assignment sheets [and] payment records."[4] Other evidence, the court believed, would easily survive scrutiny based on the plain view doctrine. *See Coolidge v. New Hampshire*, 403 U.S. 443, 465–73, 91 S.Ct. 2022, 2037–42, 29 L.Ed.2d 564 (1971). The appellant unfortunately presents to us the same general challenge which he presented to the district court. Thus, without knowing which specific admissions of evidence the appellant find objectionable and what error is alleged, we have no basis upon which we can find them clearly erroneous. *See United States v. Kiendra*, 663 F.2d at 351.

*Affirmed.*

BOWNES, Circuit Judge (dissenting).

My brothers correctly find that the search of the Shoppe without a warrant was illegal because there were no exigent circumstances. Then, on the purported authority of *Segura v. United States*, —— U.S. ——, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), and *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), they go on to hold that the warrant obtained in partial reliance on what was observed during the illegal search and issued

---

**4.** The district court correctly limited its consideration to items which the government intended to introduce at trial. The suppression issue was moot as to items in which the government had no interest as evidence.

at least forty-eight hours after the entry is valid. This extends *Segura*, distorts *Franks*, and effectively overrules *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

In *Segura*, the issue, as stated by the Chief Justice, was "whether drugs and the other items not observed during the initial entry and first discovered by the agents the day after the entry, under an admittedly valid search warrant, should have been suppressed." —— U.S. at ——, 104 S.Ct. at 3385. The Chief Justice noted that "[e]vidence obtained as the direct result of an unconstitutional search or seizure is plainly subject to exclusion." *Id.* Under the facts of *Segura*, "[n]o information obtained during the initial entry or occupation of the apartment was needed or used by the agents to secure the warrant." —— U.S. at ——, 104 S.Ct. at 3391. That is not the fact situation here; what the agents observed during the illegal search was made part of the affidavit application for the warrant that was issued.

In *Segura*, the time lapse between the initial entry and the issuance of the warrant was nineteen hours. The holding of *Segura* is specific:

Specifically, we hold that where officers, having probable cause, enter premises, and with probable cause, arrest the occupants who have legitimate possessary interests in its contents and take them into custody and, *for no more than the period here involved,* secure the premises from within to preserve the status quo while others, in good faith, are in the process of obtaining a warrant, they do not violate the Fourth Amendment's proscription against unreasonable seizures.

—— U.S. at ——, 104 S.Ct. at 3382 (emphasis added) (footnote omitted). My brothers have extended the time approved in *Segura* from nineteen hours to forty-eight hours. They do this "[i]n view of the complex circumstances of the case." Majority op. at 903. I see nothing complex in the circumstances; in fact, it is a fairly straightforward case. It is suggested that the delay was due to the fact that the day

following the seizure was a holiday, the Fourth of July. But the warrant was not issued until the evening of July 6. How much delay will be approved in the future on the basis of unarticulated complex circumstances?

The majority recognizes that it is stretching *Segura* out of context so it turns to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, to justify its validation of the warrant. With due respect, I do not think *Franks* applies. The difference between *Segura*, the instant case, and *Franks* is that in *Franks* there was no illegal entry. *Franks* was directed to the problem of using deliberate falsehoods or recklessly disregarding the truth in order to obtain a warrant. In transferring the excision approach of *Franks* to this case, my brothers have completely eviscerated *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), which held:

In order to make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person, *Boyd v. United States*, 116 U.S. 616 [6 S.Ct. 524], this Court held nearly half a century ago that evidence seized during an unlawful search could not constitute proof against the victim of the search. *Weeks v. United States*, 232 U.S. 383 [34 S.Ct. 341]. The exclusionary prohibition extends as well to the indirect as the direct products of such invasions. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 [40 S.Ct. 182].

*Id.* at 484–85, 83 S.Ct. at 415–16.

The inclusion of illegally obtained information in an affidavit for a search warrant is bound to taint the magistrate's determination of whether the warrant should issue. The question is not, as in *Franks*, whether the warrant can stand if the false statements are set aside, but whether the magistrate is able to make an objective and careful scrutiny of the affidavit in order to decide if a search warrant should issue. *See United States v. Leon*, —— U.S. ——, ——, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677 (1984) and cases cited therein. The Court noted in *Leon:*

Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according "great deference" to a magistrate's determination. *Spinelli v. United States,* 393 U.S. [410], at 419 [89 S.Ct. 584, at 590, 21 L.Ed.2d 637 (1969)]. *See Illinois v. Gates,* 462 U.S. [213], at ——, [103 S.Ct. 2317, ——, 76 L.Ed.2d 527 (1983)], *United States v. Ventresca, supra,* [380 U.S. 102], at 108–109 [85 S.Ct. 741, at 745–746, 13 L.Ed.2d 684 (1965)].

*Id.* In my opinion, the fourth amendment demands that the magistrate's warrant decision not be partially based on tainted material.

For the reasons stated, I think the warrant was invalid and the evidence obtained pursuant to it should have been suppressed. I respectfully dissent.