**UNITED STATES of America**

v.

**Joseph Dominique PONO, Jr.**

**Crim. No. 90–00038–P.**

United States District Court, D. Maine.

Sept. 25, 1990.

Nicholas M. Gess, Asst. U.S. Atty., Portland, Me., for plaintiff.

Thomas J. Poulin, Bath, Me., for defendant.

### MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

GENE CARTER, Chief Judge.

Defendant in this case is charged with possession with intent to distribute and aid-

ing and abetting the possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He has moved to suppress an Express Mail package seized from him at the time of his arrest on the grounds that it was illegally detained by the government. He also seeks to suppress statements made by him at the Bath Police Department. The Court held an evidentiary hearing on the motion and has received written submissions from both counsel.

## DETENTION OF PACKAGE

The record shows that after a review of Express Mail labels at the Portland, Maine Post Office, Postal Inspector Wilfred Moores became suspicious that Defendant might be receiving drugs in Express Mail packages from Miami, Florida. Moores instructed Bath Maine Postmaster John McMullen to watch for Express Mail packages sent from Miami for Defendant and to contact Moores if any such package arrived. Sometime on the afternoon of Sunday, June 24, 1990, or by 7 a.m. on the morning of June 25, 1990, an Express Mail package addressed to Focal Point, Inc. in Bath arrived from Miami. Focal Point, Inc. is Defendant's business address. Between 9:30 and 10:00 a.m., McMullen called Moores in Manchester, New Hampshire, where he was working on another case. After McMullen informed Moores of the package's arrival, Moores told him to hold the package, and Moores arranged for a drug-smelling dog to sniff the package at the Portland International Jetport. Moores called McMullen about 11 a.m. to instruct him to take the package to the airport for the dog's inspection. McMullen finished his morning tasks and drove the 37 miles to the airport, arriving around 1 p.m. The dog began the inspection shortly thereafter and had alerted on the package by 2 p.m., indicating the likely presence of drugs in it.

When Moores was informed around 2:30 p.m. that the dog had alerted on the package, he began drafting an affidavit for a search warrant application, which he faxed to an Assistant United States Attorney in Portland. He did not go to Portland that evening. Rather he drove there the next morning, finished the affidavit, appeared before the Magistrate and obtained a warrant to search the package at 10:42 a.m. Moores then arranged with the Bureau of Intergovernmental Drug Enforcement and the Bath Police Department for a controlled delivery of the package. Defendant picked up the package at the Bath Post Office at about 1 p.m. on June 26, 1990, and was arrested as he was about to drive away.

In the meantime Defendant, who had been expecting the package to arrive on Monday morning, June 25, had called the Post Office a few times to inquire about the package and had been told that it had not arrived. Although often Express Mail packages are delivered to Bath businesses during the late morning, the Postal Service only guarantees Express Mail delivery by 3 p.m. the day after it is sent.

Defendant argues that the detention of the package both before and after probable cause was established by the dog's sniff was unreasonably long, thus violating his constitutional rights.[1] In *United States v. LaFrance*, 879 F.2d 1, 6 (1st Cir.1989), the court of appeals instructed that in cases such as this one, the Court must first "weigh the length of the detention and its impact upon defendants' fourth amendment interests against the importance of law enforcement concerns said to justify interdiction." The court then correctly went on to define the public's interest in detecting drug dealers as compelling.

On this record, as in *LaFrance*, Defendant's interest was a possessory interest primarily delineated by the contract-based expectation that the package would be delivered to the designated address by 3 p.m. *See id.* at 7. This package, unlike the one in *LaFrance*, was taken out of its normal course of delivery. Defendant, therefore, was deprived to some extent of his expecta-

---

1. At the hearing, Defendant withdrew his challenge to the reasonableness of the detention itself, based as it was on a suspicion generated by what is commonly called a drug package profile.

tion that it would be delivered like the other Express Mail packages in Bath during the late morning. The detour to the Portland airport, however, would not have significantly interfered with Defendant's contract-based expectation had the dog not alerted on the package. *See id.* (citing *United States v. Puglisi*, 723 F.2d 779, 786 n. 7 (11th Cir.1984)). The dog had finished his inspection by 2 p.m.; thus, given the approximately forty-five minute driving time, the package could have been back in Bath for delivery by three.

■ Since probable cause was established with the dog's positive sniff test by 2 p.m., the Defendant could not reasonably have expected the package before 3 p.m., and the interference with the package's normal course did not frustrate Defendant's contractual expectations, the Court finds that the detention of Defendant's express mail package did not intrude on his possessory interest to any cognizable extent. As the Court stated in *LaFrance:* "No right protected by the fourth amendment was invaded by the officers' interference with delivery of the parcel, nor was there any impermissible intrusion on appellees' possessory interests." *LaFrance,* 879 F.2d at 10. The very slight intrusion worked on Defendant's possessory interest by removal of the package from the normal delivery course was far outweighed by the compelling governmental interest in interdicting illicit drug shipments in the mail.

■ The other prong of Defendant's argument concerning the detention of the package is that an unreasonable amount of time passed between the establishment of probable cause at 2 p.m. on June 25th and the issuance of the warrant at 10:42 a.m.

on June 26th. The Court notes that a major portion of the delay occurred during non-business hours, *i.e.,* between 5 p.m. on June 25th and 8 a.m. on June 26th. A similar fact was found noteworthy in *United States v. Veillette,* 778 F.2d 899, 903 (1st Cir.1985) in which the Court of Appeals found reasonable an almost two-day delay in obtaining a warrant after the securing of a building on probable cause. In *Veillette* the court found the Defendant's possessory interest almost non-existent because he had been arrested at the time the building was seized. Here the Defendant's possessory expectation was significantly diminished because he would not have expected to receive the package when the Post Office was closed.[2] Thus, the delay intruding on Defendant's possessory interest was less than six hours.

The record shows that Postal Inspector Moores was engaged in another matter two hours away from Portland at the time of the dog's alert. He drafted an affidavit expeditiously and faxed it to the U.S. Attorney's office in Portland. Moores drove to Portland early the next morning, put the affidavit in final form and applied for the warrant. The Court finds that under the circumstances, he acted diligently. *LaFrance,* 879 F.2d at 8.[3] Since probable cause existed, a night intervened and the government acted diligently, the Court cannot find that the relatively brief delay in obtaining a warrant was unreasonable.

## STATEMENTS

■ Defendant has also moved to suppress incriminating statements made by him after his arrest to officers at the Bath Police Department. The parties both agree

---

**2.** The Court infers that the package would not have been delivered in the night from Moores's testimony that he did not come to Maine on the night of the twenty-fifth because he could not have delivered the package then. Defendant also testified that when he called to inquire about the package, McMullen had told him to check again tomorrow. Thus, Post Office employees had accurately informed him of the expected delivery time.

**3.** The Court realizes that the factors set forth in *LaFrance* and adverted to here are for use in

analysis of detentions based on reasonable suspicion, and that we are here discussing a detention based on probable cause. The factors, however would seem to provide some guidance in what is a similar situation. Ultimately, the balance of competing governmental and fourth amendment interests will be somewhat different since the governmental interest in interdicting delivery of drugs is heightened for any given package as to which probable cause has been established.

that the disputed statements were given in the booking room of the police department. The dispute centers on whether warnings had been administered to Defendant pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) before or after he made the statements. Defendant has testified that there were three officers in the room with him and that one of them repeatedly questioned him on a drop off point for the package before Inspector Moores and Agent Bradford realized that he had not been warned of his rights. Defendant testified that Moores then administered the Miranda warnings, about five or six minutes into the interrogation. All three of the officers testified that Moores administered the warnings as soon as he entered the interrogation room, before any interrogation had begun.[4]

The Court finds the three officers' testimony as to the timing of the administration of the *Miranda* warnings to be more credible than Defendant's testimony. Defendant testified that he was "nervous" and "scared," both of which emotions might affect his memory of the events. Moreover, both Defendant and Officer Damon testified that Officer Damon twice urged Defendant to call an attorney. This solicitude for Defendant's rights tends to support the officers' testimony that the warnings were administered at the appropriate time—before the commencement of questioning about the package. The Court, therefore, finds that Defendant was advised of his rights before he made any statements. Suppression of Defendant's statements is not warranted.

Accordingly, it is ORDERED that Defendant's Motion to Suppress Evidence and Statements be, and it is hereby, DENIED.

SO ORDERED.

---

**4.** At the Post Office Agent Bradford had asked   Defendant whether he had any weapons.