UNITED STATES of America, Plaintiff,

v.

Miguel RESTO–QUIÑONEZ, Defendant.

Crim. No. 95–244 (DRD).

United States District Court,
D. Puerto Rico.

Jan. 17, 1996.

---

Benicio Sanchez–Rivera, Federal Public Defender's Office, Old San Juan, PR, for defendant.

Jacabed Rodriguez–Coss, U.S. Attorney's Office, District of P.R., Criminal Division, Hato Rey, PR, for U.S.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the Court is Defendant Miguel Resto Quiñonez' Motion to Suppress, filed on October 4, 1995 (Docket No. 16); the United States Response filed on October 31, 1995 (Docket No. 20)[1] and the Defendants' Reply of December 7, 1995 (Docket No. 24). An evidentiary hearing was held on December 19, 1995.

On July 6, 1995, at approximately 11:45 p.m., Magistrate Judge Aida Delgado Colon issued a search warrant based upon the application and affidavit of Bureau of Alcohol, Tobacco & Firearms Special Agent A.B. Ravelo. The search warrant authorized federal law enforcement officers to immediately search a residence in Llanos Alley, Sabana Abajo Ward, Carolina, Puerto Rico (the subject residence), seeking, among other things, firearms which were alleged to be possessed in violation of federal firearms laws. Approximately two hours after the authorization of the search warrant, federal agents searched the subject residence and seized two firearms, ammunition, and marijuana—the evidence which defendant seeks to suppress. The subject residence is the house of Jesus Resto, the defendant's father, where defendant's counsel stated defendant stayed from time to time.

As set forth in the affidavit, the request for the search warrant was precipitated by the discovery that between June 23, 1995 and June 29, 1995, unknown persons had accessed without force the firearms vault of the

---

**1.** Defendant requested continuance of the original hearing date in order to file a reply to the opposition (Docket No. 21).

Puerto Rico Department of Natural Resources (DNR) office located in San Juan, Puerto Rico, and had stolen over fifty (50) rifles and handguns.

The affidavit also revealed that a confidential informant (CI), who had previously provided reliable information, had been approached by a person willing to sell him two revolvers. The CI was told that the revolvers were from a recent theft. The CI further learned that several firearms, including a rifle, had recently been sold to narcotics dealers by a person known as "Fernando" who was related to the person who stole the firearms.

Further investigation by local police revealed that a person named Fernando lived in the subject residence and had a family relative who was employed as a guard by the DNR. Investigation also revealed that a possible suspect in the DNR robbery was Miguel Resto, who worked as a security guard in the DNR building from which the firearms were stolen. A records check of a vehicle that was parked in front of the subject residence indicated that it was owned by Jesus Resto. The affidavit also stated that the investigation revealed that Jesus Resto and Miguel Resto were residing in the subject residence.

 Defendant alleges that the affidavit in support of the search warrant lacked probable cause to believe that the sought-after evidence would be found in the subject residence. In determining whether probable cause exists, the Court examines whether the "totality of the circumstances facing the police" gives rise to a "fair probability" that a search of the target premises will uncover evidence of a crime. *See United States v. Jewell,* 60 F.3d 20, 22 (1st Cir.1995) and *United States v. Jordan,* 999 F.2d 11, 13 (1st Cir.1993); *United States v. Bartelho,* 71 F.3d 436 (1st Cir.1995). *See also Illinois v. Gates,* 462 U.S. 213, 233–34, 241, 103 S.Ct. 2317, 2329–30, 2333–34, 76 L.Ed.2d 527 (1983); *United States v. Garcia,* 983 F.2d 1160, 1167 (1st Cir.1993).

 In the instant case, there was "fair probability" that the illegal weapons would be found in the subject residence based on the following facts contained in the affidavit:[2]

(1) the recent theft of various firearms from the DNR by an apparent insider, as shown by the lack of forced entry; knowledge of where the valuable property was located and no search in other places of the area.

(2) the proposed sale of two revolvers to the CI that were from a recent theft;

(3) the fact that the CI learned that a person known as "Fernando" was selling firearms, including a rifle, and that he was related to the person who stole the firearms;

(4) the defendant, Miguel Resto, was a security DNR guard at the building where the firearms were stolen and he was a suspect in the theft because of his work schedule and inside knowledge of the location of the firearms vault.

(5) the fact that "Fernando" was identified as living in the subject residence that was searched and as being family related to a DNR security guard;

(6) a vehicle owned by Jesus Resto was located in front of the subject residence; and

(7) Jesus Resto and the defendant, Miguel Resto,[3] are brothers and were identified as residing in the subject residence.

At the December 19, 1995 hearing, the only witness who testified in support of defendant's Motion to Suppress was Gloria Resto Quiñonez, the defendant's sister, who testified concerning a search of her residence that took place after the search of the nearby subject residence. The Court finds this testimony to have no material bearing on the

---

**2.** The Court may also consider "reasonable inferences" that could properly be drawn from the facts set forth in the affidavit. *United States v. Zurosky,* 614 F.2d 779 (1st Cir.1979).

**3.** Miguel Resto Quiñonez was in fact sleeping at the residence object of the search warrant the night of the search.

probable cause determination with respect to the search of the subject residence.

We are guided in our disposition exclusively by the affidavit and the order of Magistrate Judge Aida M. Delgado of July 6, 1995. The Court finds that the affidavit described above contained sufficient facts to establish that there was "fair probability" that evidence of a crime (illegal weapons) would be found in the searched property. The "totality of circumstances" set forth above justified the nighttime search warrant.

■ The defendant further requests suppression of the seized evidence because the search warrant was executed at night, allegedly without proper authorization from the issuing magistrate. However, the search warrant and supporting application, when examined jointly, indicate that the issuing magistrate specifically authorized the immediate search of the subject residence. Since the search warrant was issued at 11:45 p.m., the Court finds that the magistrate knew that the search would take place at nighttime and so specifically authorized. This fact is supported by the handwritten portion on the last page of the affidavit[4] which explains the urgency and necessity for the immediate execution of the search warrant (*e.g.*, the discovery of the theft being revealed to the media, the suspects' awareness of the investigation, and the sale of the stolen firearms). Therefore, the Court finds that the nighttime execution of the search warrant was authorized by the magistrate and that the affidavit provided sufficient additional grounds to justify the nighttime intrusion into the subject residence.

■ The defendant's final argument is that the affidavit is defective because it fails to establish the "reliability" of the confidential informant. It is well-established that probable cause may be established in various ways, including hearsay from a reliable source or information from an anonymous tip that can be independently corroborated. *See Illinois v. Gates,* 462 U.S. 213, 233–34, 241, 103 S.Ct. 2317, 2329–30, 2333–34, 76 L.Ed.2d 527 (1983). In this case, as discussed above,

the information provided by the CI was corroborated and supported by an independent investigation which produced facts and/or reasonable inferences clearly linking the defendant to the theft of the firearms and the residence to be searched. Thus, the Court finds that the defendant's contention concerning the "reliability" of the CI is factually incorrect and legally insufficient to justify suppression of the evidence or to cast doubt on the existence of probable cause.

■ The United States argued that the Court need not examine the issue of probable cause because the "good faith exception" to the exclusionary rule set forth in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), provides a sufficient basis for the denial of the Motion to Suppress. Defendant countered the government's assertion by arguing, in substance, that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" and/or that the warrant was so facially deficient that an officer could not reasonably have believed it to be valid. *Id.* at 923, 104 S.Ct. at 3420–21. The Court rejects the defendant's argument and, as supported by the above discussion, finds ample reason for the executing officers to reasonably believe that the affidavit contained sufficient probable cause to search the subject residence. This is especially proper in light of the lack of any allegation that the magistrate abandoned her detached and neutral role as a judicial officer. *Id.* at 923, 104 S.Ct. at 3420–21. "It is the judicial officer's responsibility to determine whether probable cause exists to issue a warrant, and, in the ordinary case, police officers cannot be expected to question that determination." *Illinois v. Krull,* 480 U.S. 340, 349, 107 S.Ct. 1160, 1167, 94 L.Ed.2d 364 (1987). Defendant contends that *United States v. León* requires not merely good faith but "objective" good faith. *United States v. Ricciardelli,* 998 F.2d 8 (1st Cir.1993). The Court agrees; however, officer Ravelo had in fact "objective" good faith considering the "totality of circumstances" known to him as stated in the affidavit related infra. There-

---

4. See last paragraph of Order wherein agent A B Ravelo requests authority to execute the warrant

"immediately"; said request is endorsed by the Magistrate Judge.

fore, the Court finds that the "good faith exception" to the exclusionary rule applies in this case and provides an independent grounds for the denial of the defendant's suppression motion.

For the reasons set forth above, the defendant's Motion to Suppress is HEREBY DENIED.

As to the request for the disclosure of the C.I. (informant) under *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Court will hold an in camera hearing to discuss whether defendant's request complies with the Roviaro standards. The hearing is set for January 25, 1996 at 2:00 P.M.

IT IS SO ORDERED.