**UNITED STATES of America, Plaintiff,**

**v.**

**David Goveo SANTIAGO, Defendant.**

**Criminal No. 95–124(DRD).**

United States District Court,
D. Puerto Rico.

Aug. 27, 1996.

Carlos Noriega–Rodriguez, Hato Rey, PR, for David Goveo–Santiago.

Stephen W. Muldrow, U.S. Attorney's Office District of P.R., Criminal Division, Hato Rey, PR, for the U.S.

OPINION AND ORDER

DOMINGUEZ, District Judge.

The above captioned case has pending a motion to suppress evidence obtained from a search of Defendant's residence and office. (Docket No. 36). Defendant alleges that the

search warrant lacked probable cause because the affidavit submitted to Magistrate Judge Aida Delgado–Colon was incomplete, not corroborated, and included false statements. The government filed a response on November 20, 1995. (Docket No. 40). The Court DENIES Defendant's motion to suppress evidence because, as discussed below, the search was constitutional.

## FACTUAL SUMMARY

Pursuant to an ongoing investigation of the Bureau of Alcohol, Tobacco & Firearms ("ATF") concerning a group of individuals who were committing armed robberies, burglaries, and carjackings, ATF Special Agent Ravelo prepared an affidavit in support of a search warrant. The ATF agents gathered information on the criminal activity from various sources including law enforcement officers and a confidential informant ("CI") who apparently received information from a concerned witness ("CW").

The affidavit supporting the search warrant provided in part the following statements: [1]

(1) In March 1995, ATF agents began investigating David Goveo Santiago, Antonio Goveo Santiago, Benjamin Teveral, Erick Vazquez, Gilberto Figueroa Rivera, and others in connection with several robberies, home invasions, burglaries, and carjackings.

(2) David Goveo Santiago was previously convicted of several crimes including attempted robbery, voluntary homicide, attempted murder, firearms possession, and car theft.

(3) Antonio Goveo Santiago is both a convicted felon and a fugitive with an outstanding warrant charging him with "home invasion robbery" [2] and firearms possession.

(4) Benjamin Teveral was convicted of attempted robbery and firearms possession.

(5) Gilberto Figueroa Rivera is a convicted felon. Moreover, Mr. Figueroa Rivera has been convicted in conjunction with David and Antonio Goveo Santiago.

(6) CI provided information to the Puerto Rico Police Department that all the aforementioned individuals maintained firearms at Antonio Goveo Santiago's and Gilberto Figueroa Rivera's residence.

(7) CI observed David Goveo Santiago and other individuals moving firearms from Antonio Goveo Santiago's residence to that of Gilberto Figueroa Rivera.

(8) David Goveo Santiago remained with access and control of Antonio Goveo Santiago's residence.

(9) On March 26, 1995, a 911 caller told police that several persons were carrying firearms and that someone was assaulted. Upon arriving at the crime scene, police officers intervened with David Goveo Santiago, who threw a loaded firearm into a vehicle. The driver of the vehicle, Erick Vazquez, was also carrying a revolver with a mutilated serial number. Present at the crime scene was also Benjamin Teveral; a loaded firearm was recovered at his feet. The firearms recovered from Mr. Teveral and Mr. Goveo Santiago were stolen from burglarized homes.

(10) None of the suspects has a license to possess or carry any firearms.

(11) In a ravine behind Mr. Figueroa Rivera's home, the group disposed of stolen vehicles subsequently used in robberies.

(12) On April 11, 1995, a member of the group informed CI that firearms were kept at both David Goveo Santiago's residence and Gilberto Figueroa Rivera's residence. In addition, CI was informed that Defendant always kept a firearm on his person.

ATF Special Agent Ravelo added that based on his experience, he concluded that violent criminals tend to keep such firearms for long periods of time "in order to continue their criminal enterprise." On April 12, 1995, Special Agent Ravelo applied for a search warrant and Magistrate Judge Aida

---

**1.** Said affidavit is attached to the government's response. (Docket No. 40).

**2.** This reference is unclear. However, the Court believes the government is referring to

burglary, known in Spanish as "escalamiento," as defined at Art. 173 of the P.R.Criminal Code, P.R.Laws Ann. tit. 33, § 4279 (1983).

Delgado–Colon found probable cause and issued three search warrants.[3] On April 19, 1995, the search warrants were executed and stolen property was found in Defendant's residence, including two stolen firearms. Defendant now seeks to suppress the evidence.

### ANALYSIS

Defendant contends that the affidavit contained false information, was incomplete, and as such, the search warrant lacked probable cause.[4] The Court shall analyze Defendant's contentions seriatim.

### I. AFFIDAVIT SUPPORTING SEARCH WARRANT CONTAINED FALSE STATEMENTS

■ Defendant contends that several statements contained within the affidavit were false. Specifically, the affidavit provides that information regarding the investigation was received from confidential Puerto Rico Police Department sources. Defendant argues that the Police Division of Bayamón did not in fact provide any confidential information for the affidavit. The government counters that the affidavit does not contain any statements that the Puerto Rico Police Department provided any confidential information for the affidavit. In reviewing the affidavit, the Court concurs with the government's contention and finds Defendant's argument irrelevant.

■ In addition, the affidavit includes a statement that Defendant and others were observed by the informant moving weapons in and out of Defendant's brother's residence.

Defendant contends that this alleged observation is a mere fabrication. In *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978), the Supreme Court held that "where the defendant makes a **substantial preliminary showing** that a false statement knowingly and intentionally, or with reckless disregard for the truth, was **included by the affiant** in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." (emphasis added). In other words, there is a presumption that the affidavit supporting the search warrant is valid. *United States v. Valerio*, 48 F.3d 58, 62 (1st Cir.1995). A defendant must then demonstrate that the affiant recklessly or intentionally included false statements within the affidavit.

■ After carefully reviewing the record, the Court finds that Defendant has not made a **substantial preliminary showing** that Special Agent Ravelo made any false statements in the affidavit which could affect the finding of probable cause. Defendant has made conclusory allegations without support, and as such, does not meet the requirements under the *Franks* test. Moreover, a *Franks* violation occurs only if the affiant was aware that the informant was lying or if the affiant recklessly disregarded the truth. In the present case, even if the CI lied and did not in fact observe Defendant transporting weapons, that in and of itself would not

---

**3.** · The search warrants were directed at the residences of David Goveo Santiago, Antonio Goveo Santiago, and Gilberto Figueroa Rivera.

**4.** The government recognizes that the affidavit contains inaccurate information. Specifically, although the affidavit provides that CI observed Defendant and other individuals moving firearms from one residence to another, apparently a concerned witness ("CW") revealed this information to CI. However, the affiant does refer to the CW within the affidavit. "[T]he CI was informed by a member of the group that the firearms were now kept, in both Antonio Goveo's residence and Gilberto Figueroa's house and land and that David Goveo keeps a firearm on his person at all times and with him in his residence." (Aff. p. 3).

In addition, the weapons were not taken to the residence of Gilberto Figueroa Rivera, but rather to the residence of Gil Cosme Diaz. Apparently, the police officers were told that weapons were taken to "Gil's" residence. The police incorrectly assumed that "Gil" was in reference to Gilberto Figueroa Rivera, who was suspected of "being part of the gang."

As will be discussed in the opinion, the record is devoid of any substantial preliminary showing that Special Agent Ravelo intentionally or recklessly disregarded the truth. Moreover, such misstatements would not affect the finding of probable cause. *See Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978).

constitute a *Franks* violation.[5] Assuming arguendo that the CI lied, Special Agent Ravelo had no reason to believe that CI was making false statements. In the sworn affidavit, Special Agent Ravelo attested that the confidential informant had provided reliable information in the past and further that the present information had been verified and found to be truthful. Notwithstanding an absence in the record of a substantial preliminary showing, there exists no basis to conclude that Agent Ravelo either intentionally or recklessly disregarded the truth. Therefore, even under the theory that CI lied, there is no demonstration of a *Franks* violation.

■ Defendant further contends that he did not have access or control of his brother Antonio's residence. Defendant adds that as a result of an argument, he did not have control or access to Antonio's residence. The government argues that control is irrelevant to the issue of probable cause. The Court agrees. As previously mentioned, a *Franks* violation occurs only when there is a misstatement and such a misstatement affects probable cause. 438 U.S. at 155–56, 98 S.Ct. at 2676–77. *See also United States v. Veillette,* 778 F.2d 899, 904 (1st Cir.1985) (explaining that a court must set aside the misstatements and analyze whether the remainder of the affidavit supports a finding of probable cause), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). Thus, if Defendant did not remain with control or access to Antonio's residence, such an alleged misstatement is not necessary to the finding of probable cause.

## II. AFFIDAVIT WAS INCOMPLETE

Defendant further argues that the lack of specificity, as to details surrounding CI's alleged observation of Defendant and others exchanging weapons, establishes that the search warrant lacked probable cause. Defendant adds that CI's testimony has not been corroborated to determine its truthfulness. Thus, Defendant concludes that in analyzing the totality of the circumstances, the search warrant lacked probable cause.

■ A magistrate, in ascertaining probable cause, must analyze a search warrant affidavit under the totality of the circumstances test. *See Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). The totality of the circumstances analysis recognizes that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts— not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232, 103 S.Ct. at 2329. There is thus no scientific formula to be utilized by a magistrate to determine if there is probable cause to issue a search warrant. Instead, in the instance of an informant's tip, the magistrate must balance the "relative weights of all the various indicia of reliability (and unreliability) attending the informant's tip." *Gates,* 462 U.S. at 233, 103 S.Ct. at 2329. The totality of the circumstances test then requires that the magistrate examine the accuracy of the informant's testimony and the basis of the informant's knowledge.

■ In light of the *Gates* test, in the instant case, the CI's tip provides probable cause. As provided above, Defendant argues that CI's tip lacks specificity and thus fails to provide probable cause. The Court disagrees for several reasons. First, Defendant contends that there were no specific dates. However, the affidavit clearly provides that on March 15, 1995, CI observed the aforementioned exchange of weapons. In addition, Special Agent Ravelo, who has been an investigator for more than twelve years, attested that CI furnished reliable information in the past and that the present information has been verified.

---

5. [W]hen the Fourth Amendment demands a factual showing sufficient to comprise probable cause, the obvious assumption is that there will be a truthful showing.... This does not mean truthful in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be truthful in the sense that the information put forth is **believed or appropriately accepted by the affiant as true.**
*Franks,* 438 U.S. at 164–65, 98 S.Ct. at 2680–81 (emphasis added).

■ Nevertheless, the affiant must provide the magistrate with more than bare conclusions regarding the verification of the informant's tip. *Gates,* 462 U.S. at 239, 103 S.Ct. at 2332. In the affidavit, Special Agent Ravelo provided a sequence of events corroborating and supplementing the CI's tip. The affidavit provided that the ATF was investigating Defendant and others since March of 1995 for several crimes. *See supra.* Defendant, his brother, and two other defendants are felons convicted of crimes similar to those under investigation. Defendant's brother was also a fugitive from justice. The same day that police were searching for Defendant's brother at the brother's residence, CI reported the exchange of weapons. Then, on March 26, 1995, police received a call that several persons were carrying firearms and a person was assaulted. Defendant, who at the time was in close proximity to a stolen firearm, was present at the crime scene. Said firearm was traced to a burglarized home that was the subject of the ATF investigation. Thus, although those charges were subsequently dropped, Defendant was nonetheless linked to the burglarized homes (i.e. the stolen firearm).[6] CI also informed the police that Defendant always carried a firearm on his person and that he kept firearms at his residence. Further, the group under investigation was disposing stolen vehicles in a ravine behind a codefendant's house.

These facts demonstrate that under the totality of the circumstances test, when the affidavit was prepared there existed a "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. According great deference to Magistrate Judge Aida Delgado–Colon's probable cause determination, the Court finds that there was a substantial basis to conclude that evidence of a crime would be found at Defendant's residence. *Id.* at 236, 103 S.Ct. at 2331.

■ Moreover, assuming that Defendant is correct and the search warrant is not based upon probable cause, the good faith exception to the exclusionary rule is applicable. "[T]he Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *United States v. Leon,* 468 U.S. 897, 900, 104 S.Ct. 3405, 3409, 82 L.Ed.2d 677 (1984). *See also United States v. Manning,* 79 F.3d 212, 221 (1st Cir.1996) (utilizing the *Leon* standard), *petition for cert. filed,* (June 19, 1996) (No. 95–9375); *United States v. Resto–Quiñonez,* 915 F.Supp. 507, 510 (D.P.R.1996) (providing an independent ground for denying a motion to suppress). The record in the present case does not include any evidence that Magistrate Judge Aida Delgado–Colon abandoned her role as a detached and neutral judge. The Court further finds objective reasonableness in the officer's belief in the existence of probable cause.

## III. REQUEST FOR AN IN CAMERA PROCEEDING

■ As to Defendant's request to disclose the confidential informant, that request is denied. The standard delineated in *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978), provides for a hearing if there is a substantial preliminary showing that the affiant knowingly or recklessly disregarded the truth which affect the finding of probable cause. The Court finds the record devoid of any such showing. Further, Defendant has not explained how an in camera proceeding could establish a showing of an intentional or reckless disregard for the truth. *United States v. Higgins,* 995 F.2d 1, 4 (1st Cir.1993). Moreover, a *Franks* hearing is only necessary if the alleged false statements affect probable cause. *Krohn v. United States,* 742 F.2d 24, 26 (1st Cir.1984) ("[I]f the affidavit, disregarding improper misstatements, still established probable cause, plaintiff is entitled to no further constitutional safeguards."). The misstatements allegedly

---

6. Defendant also challenges the inclusion of that prior arrest in the affidavit. The Court determines that notwithstanding the inclusion of that prior arrest, there was probable cause. *Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676–77.

made by Special Agent Ravelo do not affect a finding of probable cause. Therefore, for those reasons and within this Court's discretion, Defendant's request is DENIED.

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Defendant's motion to suppress evidence.

**IT IS SO ORDERED.**